### TERRITORY vs. NUGENT.

Security for good behaviour may be required of a libeller.

PROCESS of attachment having issued against the defendant for a contempt of court by a libellous publication; he was brought in and gave bail to answer interrogatories.

CIRCUMSTANCES of aggravation attending this case, the Court* required him to give security for his good behaviour during six months : and he gave it accordingly.

AFTERWARDS, *Holmes*, moved that he might be released from his bond, and cited the case of the *King* vs. *Wilkes*, 2 *Wilson* 159, in which Lord C. J. Campden says : " We are all of opinion " that a libel is not a breach of the peace : it tends " to a breach of the peace, and that is the utmost. " I cannot find that a libeller is bound to find " surety of the peace in any book whatever, nor " ever was in any case, except that of the seven " Bishops, where three judges said that surety of " the peace is required in case of a libel.   Judge " Powell, the only honest man of the four judges, " dissented, and I am bold to be of his opinion, " and to say that case is not law, but it shews the " miserable condition of the state at that time. " Upon the whole, it is absurd to require surety " of the peace or bail in the case of a libeller."

*By the Court.*   I cannot, even upon the high

---

\* THE same considerations as in the preceding case, had induced LEWIS, J. to leave the bench.

SPRING, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

authority which is offered, admit the proposition that it is absurd to require bail from a libeller. To publish a libel is an indictable offence, and I do not see how the prosecution is to be carried on, if the person of the offender be not at first secured, and how, after arrest, he may be discharged, except upon bail.

WITH regard to surety of the peace, if it be not to be required of a libeller, it is because the publication of a libel is said not to be a breach of the peace—and therefore requiring that surety would not have the effect of preventing a reiteration of the offence, as such a reiteration would not be a breach of the peace, and consequently would not occasion the forfeiture of the recognizance. In this sense I understand Lord Chief Justice Cambden. The defendant in the case cited, Mr. Wilkes, was a member of parliament, and was charged with the publication of a libel. He contended, and, I admit, with propriety, that his situation protected him from an arrest, in all cases except treason, felony, and a breach of the peace, and the offence with which he stood charged was not treason, felony, nor a breach of the peace : but I am not to conclude that if he had not been a member of parliament surety for his good behavior could not have been required of him.

ALL the elementary writers agree that surety for the good behavior may be required of the

persons charged with the offence sworn to have been committed by the present defendant.

One may be bound to his good behaviour..... for words tending to scandalize the government, or in abuse of the officers of justice, especially in the execution of their office. 4 *Blackst.* 253. For speaking words of contempt of an inferior magistrate, as a justice of the peace and a mayor, though he be not then in the actual execution of his office; and of an inferior officer of justice, as a constable, and such like, being in the execution of his office. 1 *Hawk.* 132.

In the 18th year of Edward 3d, one John de Northampton acknowledged himself the writer of a letter, deemed by the court to be a libel against John Fenners, one of the king's council, and *committitur marescallo, et postea invenit* 6 *manucaptores pro bono gestu.* 3 *Co. Inst. c.* 76, 174.

The common law has provided a proper method for the punishment of scandalous words, [spoken of magistrates,] viz. binding to the good behaviour : by *Holt, C. J.* in *Regina* vs. *Rogers.* 2 *Ld. Raymond* 778.

Langley was indicted for speaking these words to the mayor of Salisbury, " you are a rogue and a rascal," and by Holt, C. J. the mayor had done well if he had bound the defendant over to his good behaviour. *Id.* 1029. 2 *Salk.* 697.

A magistrate may bind to good behaviour a person who abuses him. 1. *Cro.* 78.

O

SPRING, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

THE practice of requiring surety for the good behaviour from libellers prevails in the United States. Chief Justice M'Kean of Pennsylvania demanded it from Cobbett. 1 *Am. law journ.* 287. In the case of the *Commonwealth* vs. *Duane, id.* 168. Chief Justice Tilghman said : " I " will not say that there are not circumstances in " which surety for the good behaviour might be " exacted in cases of libels, before conviction ; " on the contrary, I have no doubt, but there are " occasions, on which it may be proper and neces- " sary to insist on it." It is true the Chief Justice declared his opinion, that as a general rule, it would be better not to require it. But the defendant has for a long time persisted in the practice, and it is time to put a stop to it. It is better to prevent, than to punish crimes.

IT is also proper to be observed, that the case on which the defendant relies is generally believed not to have been very accurately reported. Ridgeway, in his edition of *Cases tempore Hardwicke*, mentions it among the cases doubted or denied to be law, and *p.* 102 *in notis* informs us that Lord Chief Baron Yelverton, in a case tried before him, *Griffin* vs. *Carleton*, mentioned the principle contended for as depending on a loose saying of Lord Cambden in Wilkes's case, and stated his apprehension that the report of it is not correct. The editor also mentions the cases of the *King* vs. *Rowan*, and the *King* vs. *Dren-*

*nan,* as recent instances of a contrary practice in Ireland.

MOTION OVERRULED.

A FEW days after, the defendant appeared to answer interrogatories, and admitting that he was the writer of the libel, averred on oath he had not, in publishing it, any intention of offering any contempt to the court, or any of its members.

WHEREUPON *Holmes* and *Davezac* contended he must be discharged : for any act in order to be punishable must be criminal, and nothing can be said to be criminal that is not done *malo animo*, and the defendant's answer must be taken together : no part of it can be rejected.

*By the Court.* Where the writing is so clear as to amount of itself to a libel, all foreign circumstances introduced upon the record are unnecessary, *Rex. vs. Home. Cowper* 683. The publication being confessed, the court has only to announce whether it amounts to a contempt or not. The intention, giving it the utmost latitude, can be taken only in mitigation. It cannot make the publication less a contempt—a man may not justify his conduct by saying, I have offended, but did not mean to sin. Denying any disrespectful intention is no justification, if the words published be, in the opinion of the court, contemptuous. *The People* vs. *Frier. Cains,* 485.

SPRING, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

WHEN I consider this part of the defendant's answer, with a view to determine whether it will bear me out in lessening his punishment, I am amazed. What am I to think of the conscience of a man, who calls his God to witness that he had no intention of treating one of the members of this court with disrespect, when he published these words to the world, " I have ever believ-" ed him (the Judge) capable of all that is base " and villainous ?" What credit can I give to such testimony ? It is my duty to inflict the highest punishment which the act of the Legislature authorizes.

HE was accordingly fined fifty dollars, and committed for ten days.