## Farmers and Mechanics' Bank *against* Wilson.

An acknowledgment, such as will avoid the operation of the statute limiting the time within which an action may be brought for the recovery of lands, must be made to the owner or his agent known as such; must admit that the title of the claimant is good, and must be accompanied by a distinct agreement to leave the land or to continue as tenant.

ERROR to the common pleas of *Beaver* county.

The Farmers and Mechanics' Bank against George Wilson.

This was an action of ejectment for 241 acres of land, in which the only question which arose in this court, was as to the effect of certain declarations of the defendant in avoiding the operation of the act of limitations upon which his defence rested. The defendant had been in the adverse possession of the land for twenty-one years and upwards. The plaintiff called Enoch Marvin as witness, who said: " That he went to the land in dispute in 1817, to serve a writ of ejectment on the defendant, who said, ' that if he would pass him he would give no trouble;' that in consequence of this he did not serve an ejectment on him." The court below (Bredin, president) was of opinion that this was not such an acknowledgment of title as would avoid the operation of the statute. Verdict and judgment for the defendant.

*Shannon,* for plaintiff in error, cited 7 *Watts* 581; *Adams on Ejectment* 32; 1 *Payne* 457; 1 *Wend.* 149; 1 *Law Lib.* 82.

*Agnew,* for defendant in error, stopped by the court.

The opinion of the court was delivered by

HUSTON, J.—For a series of years this court has been engaged in reviewing the decisions on the act of limitations, of actions on simple contract debts, &c., and have nearly attained to a construction accordant with the letter and spirit of the act. But there has been danger, lest while we were returning to a correct application of one act, we were introducing a loose and unsafe construction of

X.—X

[Farmers and Mechanics' Bank v. Wilson.]

another and more important act, viz: the one limiting the time of bringing actions for the recovery of possession of lands.

If the owner is about to commence an action, and the person in possession agrees to become a tenant and hold under him, there is some colour of reason for saying, the occupant shall not thereafter say he held at first, and always held for himself, and of course adversely to all others. Yet I would require the acknowledgment to be express, to be made to the owner or his agent, known as such, and not only an acknowledgment that the title of the person coming to claim was good, but also further, a distinct agreement to leave the land or continue as tenant. And I would not receive, or if received, I would tell a jury to disregard, all conversations with neighbours or strangers, or agents, unless they announced themselves as such, and were dealt with as persons having a right to claim, and who were about to enforce the claim; and if we do not at once come to this, we are in danger of frittering down this beneficial statute, and destroying its usefulness.

Let us see the situation of each of the parties in 1817—and here I will observe, that the counsel in that district, universally refuse to bring any deeds or drafts to this court, on the testimony of any witness; all we have is a statement of facts by the judge in his charge to the jury. Every one knows, that testimony as to lines and surveys and interferences is not easily understood without a diagram: and the very words of a witness, or language of a deed, and not the purport of them, are often necessary to a *correct* decision. I shall endeavour to make such a statement of the case, as will render it intelligible, and in order to this, I shall compare the opposite titles at certain material points of time. The land lies north and west of the Ohio and Allegheny, and a right to a tract could be acquired by paying for a warrant, and settling within two years, or by making an actual settlement and continuing it; and this latter mode gave title as complete and perfect, if there was no previous right, as if the settler began with a warrant; I mean as complete and perfect against every other person; as to the state, it was subject to the payment of the purchase-money. The title shown by the plaintiff was founded on warrants dated 1794, in the names of John Philips and Samuel Pleasants; they were surveyed and returned in 1795. There was no allegation as *to any* settlement having been made under these warrants. These two warrants, as part of a large body of land became the property of the Population Land Co., and passed from them to J. B. Wallis and Wm Griffiths. The dates of the deeds are not given. July 1, 1805, the Population Company by letter of attorney, appointed Ennion Williams their agent. He had been a deputy surveyor. In the fall of that year, he employed John Martin to resurvey and mark the lines of the company's land, and pointed out as the place of beginning, the southeast corner of a survey for Alexander Wright, which warrant and survey were older than that of the Pleasants and Philips warrants. Martin run and marked the lines, and did

[Farmers and Mechanics' Bank v. Wilson.]

not include the land now held by the defendant; he left it entirely to the east—the lines and corners made by him are still standing.

In 1809, the Population Company duly appointed Enoch Marvin their attorney. That company sold to Griffith and Wallis, who in 1813 appointed Marvin their agent, and he continued so till the 1st of December 1818, when Wallis and Griffith conveyed to the bank, now plaintiff. The deed conveys a large body of land, comprising many tracts, among them John Philips' and 150 acres of the tract of Samuel Pleasants, and refers to a schedule and general draft, (none of these produced before us.) The company in 1810 had by their agent returned to the commissioners for taxation Samuel Pleasants as 200 acres, and so as I understand it, it continued to be taxed, until the plaintiff in 1834 and 1835 sold in two parcels to the defendant 157 acres of it; these parcels lay west of the land in dispute, and is alleged to be all the plaintiff then claimed. The defendant claims as follows:—in 1795 Joseph Moore went on the tract in dispute and deadened some trees, but went away and in 1798 after the two years from the peace of 1795 returned and finding no improvement began or made, he built a house and moved his family on to the land, and continued to reside on and cultivate it until he sold to defendant in 1812.

In 1802 he procured the deputy surveyor to survey his claim, 241 acres, as by law he was required to do: he was living on this when Martin made his survey, or re-survey for the Population Company, who by their lines showed they did not claim his land. In 1812 he conveyed by deed duly recorded, to the defendant, who immediately moved on and has resided there ever since. In 1817 Mr Marvin, the agent, first went to the land in question, in order to serve an ejectment on him. He states, that " Wilson said if he would pass him, he would give no trouble." (These are the words and the only words before this court). " That in consequence of this he did not serve an ejectment on him."

A witness who was present says, the conversation resulted in Marvin saying, " he would at this time serve no ejectment on him."

How did the parties stand at that date? Each had a title which each alleged was acquired under and in conformity to the act of assembly. The construction of that act has been different in different courts, and in the same court at different times, in some particulars; but it is necessary to state how this dispute arose. The return of survey of Samuel Pleasants calls for adjoining Andrew Porter on the east, as well as it calls for a south-east corner of A. Wright as a beginning; now if you begin there, you will not come near Andrew Porter. The tract in dispute, 241 acres, lies between them. The judge stated correctly, that if a survey calls for adjoining another, it must go to that other, although this would make some of its lines too long. This is a general, but not a universal rule; if the survey called for were ten miles off, or two, or even one, it would not apply; it would be apparent it was called for by mis-

take or fraud.  Any person, even the deputy surveyor who made the mistake, if it was satisfactorily proved to be a mistake, might take up the land between the two surveys.  This was expressly decided in Weidman *v.* Felonley, from Centre county.  The judgment of the common pleas was affirmed, and the case is not reported, though an opinion was delivered in the case; I was counsel for the party who lost the cause.

But in this case, those under whom the plaintiff claimed, designated their line on that side thirty-five years ago, and included their quantity.  The land then by them excluded, has been occupied and sold, and by them never claimed until 1837; and I do not agree with the judge, that under these circumstances the plaintiff could recover in this case, unless the statute of limitations intervened—but I pass this.

· The proposition to the court was, if the jury believed Enoch Marvin, the plaintiff might recover.  No counsel ought, where there is much testimony, to select a part and ask the court to put the cause on that.  The cause must depend on all the testimony, and not on six words extracted from the testimony of one witness. Marvin was relating what had been said twenty years before—he went to serve an ejectment on a man, who by the draft in his hand did not live on his land.  The testimony of the other witness, was the natural conclusion, " I'll do nothing at the present time."  And the understanding of him and the defendant, must have been contingent on a comparison of titles.  But I pass this too, and suppose Marvin to have been the only witness, "If he would pass him he would give no trouble."  Was this a parol disclaimer of any title in himself?  If it was, was it to destroy his purchase, and price paid, and past and future labour, in favour of a plaintiff who did not ask him to remove or to take a lease even by parol.  In Creswill *v.* Altemus, 7 *Watts* 505, we went far enough: the agent said, you may live on, but you must pay the taxes and take care that the timber is not destroyed.  In this case there is nothing like it.  In *Johnson's Reports* we find this case: "A man had been in possession some years, and heard that another had a better title, and in 1779 wrote, " I have heard you have a title to my land.  As soon as these troubles are over, if you will come, we will settle this matter, I do not wish a dispute."  The matter rested many years, and he who received the letter brought ejectment.  The court struck out four years from 1779 till 1783, and as the period before the letter and after the war, added together, exceeded twenty years, held the defendant protected by the statute.

In Sailor *v.* 'Hartzog, 4 *Whart.* 259, this matter was under the consideration of this court.  The defendant had purchassd from one in possession, but refused to make payment of instalment of price still due; met plaintiff to compare titles, and proposed to compromise, but neither gave up his possession nor became a tenant. The matter rested fifteen years, and then the plaintiff brought suit. The time before and after the talk of compromise, exceeded twenty-

one years, and this court held, that the defendant was protected by the statute.

The charge of the judge was as favourable on the construction of the statute, as it ought to have been, and more so: to put a defendant out of its protection, both claimant and defendant must distinctly understand, that defendant not only supposed plaintiff's title good, but also agreed to deliver possession to plaintiff, or to hold under him thereafter, to become a tenant and nothing short of this— no loose conversations—no inferences from what was said many years ago—no expressions to neighbours, or strangers to the title, will deprive a man of the protection of this most wise and beneficial statute.

Judgment affirmed.