## SAILOR v. HERTZOGG.

1. It is not sufficient to admit an insolvent petition from one under whom the other party claims, that the names are identical, and twenty-five years having elapsed since the filing thereof.
2. When the title is incomplete, under the statute of limitations, in one either a trespasser or with colour, admissions of facts by him are evidence to show possession is not held adversely.
3. Admissions of independent facts, even though in an offer of compromise, are evidence, though concessions for the purpose of a compromise in a treaty would not be so. GIBSON, C. J.

CERTIFICATE from the Nisi Prius.

*Jan. 27.*—This case is reported at length in 4 Whart. 259; but two points were considered here. On the trial, before Huston, J., plaintiff having shown title through Jacob Sailor, defendant offered the insolvent petition, &c., of Jacob Sailor, in 1817, which was objected to, without evidence of identity, but admitted. It being a disputed question, on the evidence, whether possession had been taken by those under whom defendant claimed twenty-one years anterior to 1815, plaintiff offered to prove that in the year 1815, Daniel Ley, under whom the defendant claims, clearly, absolutely, unquestionably, and unconditionally, acknowledged the title of Jacob Sailor, under whom plaintiff claims, and agreed either to purchase or to rent the premises from Jacob Sailor, admitted that he had no title to the premises himself, and that Sailor had the true title, and declared in *effect that he intended no longer to hold adversely to him, and that his declarations and admissions were such as to induce Sailor to believe that he would in future hold under him;* but the witness was rejected on the ground that a party having been in possession more than twenty-one years, especially when under colour of title, could not be affected by any thing short of what would avail to divest the title.

*H. Hubbell* and *Rawle,* for plaintiff.—The main question for the jury was assumed here; and also that a witness could state exactly what he did on a former trial. Now it is clear, that whether possession be

adverse or not, is for the jury; McMasters v. Bell, 2 Penna. 180. Here the offer, if proved, would have clearly shown the possession was by permission, under an offer to purchase—the very point decided in Miller v. Keen, 5 Watts, 548. Circumstances may be used for this purpose, Wallace v. Duffy, 2 Serg. & Rawle, 527. In fact, we used the very language of the judge, in Farmer v. Wilson, 10 Watts, 261 ; and entirely within that laid down in Cresswell v. Altemus, 7 Watts, 366 ; so that, in fact, the question for this court is the important one of keeping the duties of the judge and jury separate.

C. Ingersoll and Keemlé, contrà.—The witness had been examined five times, and this court, in 4 Whart. 285, 286, decided his evidence would not sustain the case. Why, then, waste the time of the court ? In Farmers v. Wilson, 10 Watts, 261, nothing short of an express agreement to become a tenant, or quit, is said to be sufficient. Nor was there any offer to show the possession was retained by a fraud or trick, which is the exception, Paul v. Mackey, 3 Watts, 125 ; and it is the duty of the court to reject irrelevant testimony, Pettrich v. Searle, 5 Serg. & Rawle, 237. What was to be proved, in effect, amounted to nothing more than the facts stated in his offer, after being required to specify ; Commonwealth v. Breneman, 1 Rawle, 316, 317.

Feb. 27. GIBSON, C. J.—The petition of Jacob Sailor, for the benefit of the insolvent laws, in 1817, ought not to have gone to the jury unattended with evidence that he was the person under whom the plaintiff claims. Identity of name is ordinarily, but not always, primâ facie evidence of personal identity. The authorities, on the subject, may be consulted in Sewall v. Evans, 4 Ad. & Ellis, 632 ; (S. C. 45 E. C. L. R. 631,) from which Lord Denman, and the other judges of the Queen's Bench, concluded that identity of name is something from which an inference may be drawn, unless the name were a very common one, or the transaction remote ; and the reason given for casting the onus on the party who denies, is that disproof can be readily had by calling the person, whose identity is contested, into court. The name, in this instance, is not a very common one ; but after more than a quarter of a century there ought certainly to be some preliminary evidence, however small.

Without intimating an opinion on the facts that might have been proved, we hesitate not to say that the testimony of Isaac Young ought to have been admitted, that the jury might determine whether it proved an independent acknowledgment, by Ley, of Sailor's title, and a declaration that he would not hold adversely to it, which, though accompanied with an offer to purchase, was allowed

to rebut an allegation of adverse possession in Miller *v.* Keane, 5 Watts, 348, or only an offer of compromise, under a belief, whether true or false, that Sailor had the better title, which would be no acknowledgment at all.    The offer was, that Ley admitted the title to be in Sailor; that he declared, in effect, he would hold adversely to it no longer; and that his declarations were such as to have induced Sailor to believe he was going to hold under him.    Certainly, if the evidence had come up to the offer, it would have disproved the allegation of adverse possession very effectually, because it would have proved an unconditional submission to Sailor's right, even though it were coupled with an offer to purchase, which would have been entirely consistent with it; and though it did not constitute a contract that could be enforced by a court of law, or even the abstract relation of landlord and tenant, which was thought to be indispensable by Mr. Justice Huston, in the Farmers and Mechanics' Bank *v.* Wilson, 10 Watts, 264.   He affirmed without qualification in that case, as well as in the trial of the present, that the occupant must have entered into an *agreement* or a *contract* to leave the land or take a lease of it. Would the possession of one who had done so be more or less an occupancy by *permission*, than that of one who had been suffered to occupy under a treaty of purchase which had failed by reason of inability to come to terms?   Nor is it material, though it was supposed to be, that Ley had entered under a recorded deed from a supposed owner to whom he had paid the greater part of the purchase money.   If indeed the statute had already closed upon the title, nothing less than a legal or an equitable conveyance would have revested it.    But that was not the question.   It was admitted by the judge, in his charge, to be doubtful whether the evidence made out an adverse possession from 1790, and consequently, whether the statute had run its course in 1815, when Ley submitted and proposed to purchase.   Now, a parol disclaimer of hostile possession has the same effect, whether it be made by a colourable owner or an avowed intruder.   Each is equally a trespasser, and each equally stops the running of the statute when he surrenders at discretion.   Mr. Justice Kennedy stated an indisputable principle in Creswell *v.* Altemus, 7 Watts, 581, when he said that " it is sufficient to prevent the possession from being adverse, that the party taking possession *intends* to occupy the land subject to the *will* of the owner; and that if this be made to appear clearly by the evidence, the statute of limitations will form no bar to the owner's recovery of the possession whenever he may demand it."   But how can his intention be made to appear by any thing else than his declarations, which have always been received as evidence of the nature of

an occupant's possession ? By the rule just stated, it is enough that he does not himself consider it to be adverse. In consonance with it, I allowed a plaintiff at Nisi Prius to recover a few inches of ground covered by the side of a frame warehouse which had been accidentally pushed over the line by pressure of the contents within, but which had been concealed from view by an adjoining building. And on the same principle is Comegys v. Carley, 3 Watts, 280, in which possession had been taken in mutual misapprehension of a boundary. In Hawkes v. Senseman, 6 Serg. & Rawle, 23, adverse possession was defined to be such as is " actual, continued, visible, notorious, distinct, and *hostile*." And why must it be so ? Because the statute protects the occupant, not for his merit, for he has none, but for the demerit of his antagonist in delaying the contest beyond the period assigned for it, when papers may be lost, facts forgotten, or witnesses dead. Why then should an occupant be protected who has himself induced the delay by insincere professions of submission, and illusory proposals of purchase ? (The ˙statute was not made to serve the purposes of artifice and trick.) For this reason it was, that letters which contained a recognition of the title and a proposal to purchase, were held to stop the running of the statute in Miller v. Keane. And they were rightly so held ; for there is a marked difference between the positive admission of particular facts, and an offer to buy peace without regard to the title. An offer of compromise is not allowed to operate as an implied recognition of the opposite title, because it is not necessarily so ; for a man may choose to buy in even a worthless title to avoid a lawsuit ; and he must be allowed to bid for it without being supposed to admit any thing. But the direct confession of a fact stands on different ground. In Cumming v. French, 2 Camp. 106, n., the clerk of the plaintiff's attorney, being called to prove notice of dishonour, testified that the defendant, being asked, when arrested, what he proposed by way of settlement, replied, " I am willing to give my bill at one or two months ;" upon which Lord Ellenborough nonsuited the plaintiff, saying, " this is neither an acknowledgment of notice, nor a waiver of it." It is easy to. divine what he would have said, had the acknowledgment of notice been direct instead of inferential. The result collected from the cases by Professor Greenleaf, in his Treatise on the Law of Evidence, part 2, chap. ii. sect. 92, is that the direct admission of a fact will always be received, unless it were made expressly without prejudice, or, at the least, on the faith of a pending treaty, into which the party might.have been led by a confident expectation that a compromise would take place ; and that even an offer to compromise a claim thus tacitly admitted, is competent evidence, unless it were ac-

companied with a caution that the offer was confidential. And the authorities sustain it. " Evidence of concessions," said Lord Ellenborough, in Gregory v. Howard, 3 Esp. 113, " I shall never admit: but facts admitted before arbitrators I always shall." An independent fact is never acknowledged by way of *concession*. In Waldridge v. Kennison, 1 Esp. 144, an admission of handwriting, made pending a treaty of compromise, was received. True it is that Lord Kenyon said, the handwriting was no way connected with the merits, and that it was capable of being proved by other means. But it was, therefore, the more distinctly an independent fact: and an admission is not the less competent because it would not have availed the party to withhold it. In Slack v. Buchannan, Peake's Ca. 5, Lord Kenyon said he would, in future, receive evidence of all admissions which the party would be bound to make in answer to a bill in equity. In Cory v. Britton, 4 Car. & Payne, 462, a letter containing an acknowledgment of the debt was ruled out only because it contained a reservation of a right to object to its being used to the writer's prejudice, " now, or in any future arrangement that may be made or instituted." It had evidently been written in the course of a negotiation to compromise. So far the English cases; and the American courts go certainly as far. They hold that the admission of *any* independent fact is receivable, though made during a treaty of compromise; for which are given, Mount v. Bogart, Anthon's Rep. 190; Murray v. Coster, 4 Cow. 635; Fuller v. Hampton, 3 Conn. 416 ; Sanborn v. Neilson, 4 New Hamp. 501; Gerrish v. Sweetser, 4 Pick. Rep. 374, and Delogny v. Rentoul, 1 Martin, 106. " The law on this subject," said Chief Justice Hosmer, in Hartford B. Company v. Granger, 4 Conn. 148, " has been often misconceived, and it is time that it be firmly established. It is never the intendment of the law to shut out the truth, but to repel any *inference* which may arise from a proposition made, not with the design to admit the existence of a fact, but merely to buy one's peace. If, however, an admission is made *because* it is a fact, the evidence to prove it is competent, whatever motive may have prompted the declaration. If A. offers to B. ten pounds in satisfaction of his claim of a hundred pounds, merely to prevent a suit, or purchase tranquillity, this *implies* no admission that any sum is due, and therefore the testimony to prove the fact must be rejected, because it evinces nothing concerning the merits of the controversy. But if A. admits a particular item in the account, or any other fact, meaning to make the admission as being true, this is good evidence, although the object of the conversation was to compromise an existing controversy." I have extracted the passage entire, because it contains a more lucid statement of the

distinction than I have seen elsewhere. Now, the case offered to be proved in this action is the very case actually proved in Miller *v.* Keane, except that the admission in the one was written, and in the other verbal—a difference that was held to be immaterial in Cory *v.* Britton, just cited; and it is certain that the proposal to purchase, in the latter, was not allowed to reduce the whole to the consistence of an offer of compromise, or make the direct admission of the fact of ownership and amicable holding the less potent to rebut the allegation of adverse possession. Whether the evidence will sustain the offer, when it shall be heard, it is not for us at present to determine, from any thing that has heretofore transpired: it is enough to say that the plaintiff is entitled to go with it before a jury.

Judgment reversed, and venire de novo awarded.