# Smith, Appellant, *v.* Equitable Trust Company (No. 1).

*Factors—Commission merchants—Counsel fees.*

Where a commission merchant starts litigation to maintain his rights as a pledgee of goods consigned to him, and this litigation is not against the consignor, but against other persons claiming goods as their own, and the litigation results successfully in favor of the commission merchant, the latter is not entitled to take from the balance in his hands after his debt has been paid counsel fees and expenses incurred by him in the litigation.

There can be no recovery for counsel fees from the adverse party to a cause in the absence of express statutory allowance of the same.

Argued March 26, 1906. Appeal, No. 51, Jan. T., 1906, by plaintiff, from order of C. P. No. 2, Phila. Co., Sept. T., 1899, No. 792, dismissing exceptions to supplemental report of referee in case of C. Shillard Smith and Clarence L. McIlhenney, trading with Philip Jagode, now deceased, as Philip Jagode & Company, *v.* The Equitable Trust Company, Assignee and Receiver of the Keen-Sutterle Co., the Tradesmen's National Bank of the City of New York, Joseph B. Moors and Arthur W. Moors, trading as J. B. Moors & Company, and Robert H. Foerderer. Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of H. Gordon McCouch Esq., referee. The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to referee's report.

*N. Dubois Miller,* with him *Biddle & Ward,* for Jagode & Company, appellants.—When a factor makes advances on property pledged to him to repay the advances, he is entitled to charge against the fund realized by the sale of the collateral all reasonable expenses to which he has been put in realizing upon or defending his title to such collateral, when they are due to the inherent character of the collateral, or to facts and circumstances created or brought about by the pledgor himself: Knox v. Moatz, 15 Pa. 74; Blake v. Paul, 29 Legal Int. 366; Ballingall v. Hunsberger, 16 Pa. Superior Ct. 117; Reynolds v. Cridge, 131 Pa. 189; Gregory v. Pike, 67 Fed. Repr. 837; Gregory v. Van Ee, 164 U. S. 703 (17 Sup. Ct. Repr. 994); Hurst v. Coley, 22 Fed. Repr. 183; Furness v. Union Nat. Bank, 147 Ill. 570 (35 N. E. Repr. 624); Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207.

*Joseph De F. Junkin,* for J. B. Moors & Company, appellees.

*V. Gilpin Robinson,* for Tradesmen's National Bank, appellee, cited: Hanna v. Holton, 78 Pa. 334; Mairs v. Taylor, 40 Pa. 446; Groff's App., 3 Penny. 245; Hain v. Martin, 5 Watts, 179; DeCoursey v. Johnston, 134 Pa. 328; Willard v. White, 56 Hun, 581 (10 N. Y. Supp. 170); Work v. Tibbits, 87 Hun, 352 (34 N. Y. Supp. 308).

OPINION BY MR. JUSTICE POTTER, May 24, 1906:

The single question presented for decision by this appeal is whether under all the circumstances of the case Jagode & Company are entitled to charge against the fund in their hands the counsel fees and expenses incurred by them in maintaining their rights as pledgees of wool consigned to them by the Keen-Sutterle Company as against the attacks of other claimants. The referee held that they were so entitled, while the learned judge of the court of common pleas held that they were not. The general doctrine is not disputed that as between the consignor and the factor, where the former is put to expense in defending the title to the collateral, for the benefit of the consignor, he is entitled to be reimbursed out of the proceeds of the collateral; this principle applies when the services rendered, and the expenditures incurred are for the protection or enhancement of a common fund, or for the general benefit of all the parties to the controversy. Where, however, the services are rendered or expenses incurred for the benefit of the individual party conducting the litigation, it is not proper that an allowance to cover them should be made out of the general estate. In the present case the Keen-Sutterle Company, which was the consignor, had failed and made a voluntary assignment for the benefit of its creditors, and the assignee was also appointed as receiver. The litigation which thereafter arose was between the various creditors, as to which was entitled to the collateral. In the part which Jagode & Company took in this litigation they were, we think, protecting themselves only. As the court below concisely puts it, " Jagode & Company were adversaries of the bank and of J. B. Moors & Company and pushed their contest to its uttermost end, a judgment for their money and expenses, and this judgment was paid to Jagode & Company out of moneys which otherwise would have belonged to the defeated parties. That there are sound reasons in legal policy for permitting Jagode & Company to win, is unquestionable, but this victory gained under special and exceptional circumstances, cannot overturn the true relation of things. Jagode & Company began as adversaries to the others, and so continued to the end. Instead of raising a fund for the bank or for the Moors, they rather procured judgment out of the latter's goods." We are unable to see that the consignor

had any interest whatever in the result of the litigation. It had divested itself of all interest in the goods, and their disposition was left to the creditors to determine among themselves. We cannot find that Jagode & Company expressed at any time a willingness to share the fund arising from the sale of the wool, with any of the other claimants. On the contrary, they took out of it every dollar of the amount of their advances, together with interest and the usual factors' commissions and charges for caring for, and making sale of the wool. If they had allowed the proceeds to be treated as a common fund, for the benefit of all the claimants, and to be shared proportionately among them, then there would have been equity in the suggestion that the expense of the litigation should be shared by all those who benefited by it. But no one was benefited by this litigation except Jagode & Company. In the fight which they made they contended for their own rights, and for them alone, and this too not as against the consignor, Keen-Sutterle Company, but against the claims of the bank, and of Moors & Company.

The right of a secured creditor to charge the fund with costs and expenses, does not, we think, go to the extent of including the expense of establishing the fact of his right to a preference as against other creditors.

This point is ruled in Work v. Tibbits, 87 Hun, 352, as cited by the referee in his report in this case. The contention is there stated, as follows: " But the plaintiffs claim that in this case they can take out of the proceeds arising from the sale of the stock . . . . not only the amount loaned by them and the taxable costs, . . . . but all counsel fees incurred by them in establishing the priority of their equity. They have no precedent directly in point for it, but claim to be within the rule which permits a pledgee to charge to the pledgor, and deduct from the fund realized by the sale of the thing pledged all necessary expenses incurred in clearing and defending the pledgor's title. A distinction between such a case and this at once forces itself upon the attention, and that is that these plaintiffs have been allowed to deduct over $4,000 for expenses incurred not in defending the pledgor's title, for he had none, but in defending the validity of the transfer to themselves. The plaintiff's pledgor did not have any title, and therefore they

did not receive any from him.   Nevertheless, they defeated Tibbetts because he so acted as to put it in the power of his brokers to induce them to make a loan on the faith of the pledgor's ownership of the stock.   Such a defeat ordinarily carries against the defeated party, and in favor of the successful one, taxable costs, with perhaps an allowance.   There seems to be no good reason why these plaintiffs should be more favored then the average suitor, nor why this defendant should be more severely punished for his neglect than the many who are called upon to respond to others in some manner for their carelessness."

So in the present case we can see no reason why Jagode & Company should be favored beyond any litigant who is sued, and forced to defend against what may turn out to be an unfounded claim.

All that they did was to defend an attack upon their title. They were successful, and the result of the litigation established their right to be repaid the advances which they had made.   But this did not give them the right to recover counsel fees, and the expenses of the litigation.   "There is no law in Pennsylvania to warrant the payment as 'costs in the cause' of the fees of counsel for professional services, or of the value of the time bestowed, or the amount of expenses incurred by a party in its preparation and trial; without an act of assembly empowering it, the courts cannot create a fee-bill, and it would be a usurpation of legislative functions to allow as between party and party charges to which no statute has ever given the character of costs.   Since Wilt v. Vickers, 8 Watts, 227, and Rogers v. Fales, 5 Pa. 154, were overruled, compensation has never been recoverable for trouble and expenses in conducting a suit and establishing a right:" Winton's Appeal, 87 Pa. 77 (84).

Over and over again we have decided there can be no recovery for counsel fees from the adverse party to a cause, in the absence of express statutory allowance of the same: Com. v. Meyer, 170 Pa. 380.

The assignments of error are all overruled, and the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellant.