430 A.2d 280

ROCHESTER MACHINE CORPORATION,

v.

MULACH STEEL CORPORATION, Appellant.

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed May 15, 1981.

Petition for Allowance of Appeal Granted Sept. 4, 1981.

Fred C. Houston, Jr., Pittsburgh, for appellant.

John J. Petrush, Beaver Falls, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

This is an appeal by Mulach Steel Corporation from the trial court's denial of a new trial after that court sustained the validity of a judgment by confession. The issues for our determination are whether the court erred in admitting certain letters into evidence, and in charging the jury to add

attorney's commission to any verdict in favor of plaintiff.[1] We reverse and remand for a new trial.

On November 14, 1975, Rochester Machine Corporation leased certain premises to Mulach Steel Corporation until November 14, 1976. This lease subsequently was extended to November 14, 1977. The appellant, during the lease term, breached the covenants of the lease. In response, the appellee caused the entry of judgment against appellant by confession for the sum of $37,944.49 together with costs of suit plus attorney's fees of 10% for collection, making a total of $41,738.94. Later, upon the petition brought by appellant, the court granted a rule to show cause why the judgment entered should not be opened. The parties subsequently entered into a consent order that the judgment entered against appellant by confession on January 24, 1978 be opened and that the case proceed to trial before the court and jury.[2]

Appellant has raised two questions: first, did the court commit error in admitting into evidence letters written by respective counsel for the parties; and, second, did the court err in instructing the jury to add 10% attorney's commission if the jury found a verdict in favor of plaintiff.

A letter dated August 31, 1977 was sent by Rochester Machine Corporation to Mulach Steel Corporation entitled, "Lease from Rochester Machine Corporation of Realty in New Brighton, Pennsylvania." It detailed the extensive repairs needed to be made by Mulach for damages caused during the occupancy, estimated to exceed $30,000, plus the rental value of the premises during the time repairs were being made.[3] In response to this letter came a letter from appellant's counsel dated October 31, 1977. The letter

1. Attorney's fees were to be 10% of the damages assessed in a judgment.

2. This proceeding was governed by Pa.R.C.P. 2959 and 2960.

3. This letter was a detailed description of damages first complained of by appellee to appellant in a letter on August 11, 1977.

states, "Mulach accepts responsibility" for some but not all damages caused to appellee's property.[4]

The lower court explained in its charge to the jury Mulach's obligation to surrender the premises at the end of the term, or renewal thereof, in as good condition as they were at the beginning of their tenancy. The court also explained to the jury the admission and denials contained in Mulach's letter of October 31, 1977 and reviewed all the evidence as to the condition of the premises, the liability to make repairs, the admission of needed repairs and the denial of liability as to others. The court said:

You are to decide the weight to give to these admissions and declarations and denials contained in said letters, and you are to consider such letters with all the other evidence in the case and you are the ones finally to determine what the facts are in the case.

At the conclusion of its charge, the court asked respective counsel if they have any objections, amendments or additions to the charge. Appellant objected to the court's charge on attorney's commission. Furthermore Mulach contends the letter of October 31, 1977 was inadmissible evidence because it was an offer to compromise. Rochester claims that letter is an admission of a party opponent. The trial court concluded the letter was not an offer to compromise or settle.

The record, however, does not necessarily support the trial court's conclusion. The communications were initiated by Rochester long before judgment was entered by Rochester on January 24, 1978. Mulach responded to Rochester's inquiry before confession was entered. It is a logical inference under these circumstances that Rochester desired some extra judicial resolution of the dispute, otherwise, they would have simply had a judgment entered pursuant to the lease agreement. In fact, Rochester apparently weighed the October 31, 1977 response in their mind for some time before

4. Appellant admitted the genuineness of the October 31, 1977 letter but reserved the right to object to its relevance or admissibility at trial.

deciding to have a judgment entered. Thus, it is not unprobable that the communications between the parties were part of a negotiation process which did not resolve into a compromise or settlement but was initiated with that goal in mind.

The August 31, 1977 letter from appellee to appellant stated in pertinent part:

The extensive repairs made necessary by damage during your occupancy are as follows:

### Building

1. Install new lay-in ceiling in toilet room.
2. Install trim on door.
3. Refit two (2) doors.
4. Install 37 lin. feet of handrail to match existing.
5. Re-glaze one sash in office.
6. Board up opening 10'–0 × 12'–0 with 2x4's and ½" plyscore.
7. Re-install 19'–0 of existing handrail.
8. Install new roll-up steel door 29'–0 × 22'–0 with electric operator 220V, 3 phase A.C.
9. Install new roll-up steel door approx. size 20'–0 × 20'–0.
10. Repair slats on roll-up steel door approx. size 20'–0 × 20'–0.
11. Repair and/or replace as needed approx. 625 sq. ft. steel siding.
12. Repair block and re-fit garage door on rear Black Building.
13. Refit door and repair operator on small garage door.

Our client has received an estimate from a contractor (Vanport Construction, Inc., Box 409, Beaver, PA) that the cost of such repairs will be $21,276.

### Cranes

The three overhead traveling cranes in the building have been poorly maintained during your tenancy. As a result, the pendants on all have to be replaced, and the motors and switch gear need to be replaced or completely reconditioned.

Our client estimates the cost of this work to be about $10,000.

### Storage Yard Fencing

6′ High PAGE STYLE OTR Construction

Fabric—#9 gauge wire × 2″ mesh × 72″ ALUMIN-IZED

Line Posts—2½″ OD Pipe on 10′ maximum centers

Top Rail—1⅝″ OD Pipe

Terminal Posts—3″ OD Pipe

Gate Posts—4″ OD Pipe

Gate Frame—2″ OD Pipe, strong welded corner construction

Post Footers—All posts set 36″ deep in the ground in concrete

ALL MATERIALS ALUMINIZED, HOT DIPPED GAL-VANIZED OR ALUMINUM

*QUANTITIES:*

2—16′ Double Swing Drive Gates

2—4″ OD Gate Posts

1—3″ OD Corner Post

13 lineal feet of fence

Erection of above

Burn off and take down existing fence as required to install the above materials.

Our client has received an estimate from a contractor (Pittsburgh Fence Co., Inc., P.O. Box 522, Carnegie, PA) that the cost of such repairs will be $1,250.

In view of the nature and extent of the damage and the cost of the required repairs (over $30,000), we must insist upon a *prompt and definite commitment from you re-*

*specting the restoration of the premises to their former good condition.*

In conclusion, we wish to inform you that under Pennsylvania law, in a situation of this kind the landlord is entitled not only to the cost of repairs, but also to the rental value of the premises lost during the period while repairs are being made. Thus, you will see that it is in your best interest as well as our client's to resolve this matter as soon as possible. (Emphasis added).

The October 31, 1977 letter in response from appellant states in pertinent part:

After our visit to New Brighton, I have had the client make a detailed reply to your letter of August 31, and it consists of the following:

### BUILDING

1. Client insists that the lay-in ceiling in the toilet room had fallen when they took possession, and they will not do anything about this.
2. Mulach accepts *responsibility.*
3. Mulach accepts *responsibility.*
4. Mulach accepts *responsibility.*
5. Mulach accepts *responsibility.*
6. Mulach has already boarded this up just exactly as it was when their Lease began.
7. Mulach accepts *responsibility.*
8. Mulach does not accept responsibility. Our employees tell us that Mr. Jeffrey Bruce cut all the holes in that door, and we will do nothing about it. He denies this, but this is a factual issue.
9. Mulach will install the old door and will set it into the present space. This is as far as we will go.
10. Mulach accepts *responsibility.*
11. Mulach will repair the siding and paint the same.
12. Mulach accepts *responsibility.*

13. We question whether or not the owners' insurance would cover this item. It occurred when the building was broken into by third parties.

## CRANES

Mulach will accept no responsibility for the cranes except to replace the pennants. The cranes are in better shape today than they were when Mulach began its Lease. Our electrician tested them all and they all function well. As a matter of fact, when we took over the building under the Lease, our electricians did a lot of rewiring of these cranes and improved their efficiency. All the moving parts are hard steel which should last some 10,000 years. There is nothing that we are willing to do except to replace the pennants.

## STORAGE YARD FENCING

All of the damage to this fencing was caused by third parties breaking into the yard. All of this damage is on police reports in New Brighton.

Paragraph 4 of the Lease states, inter alia, as follows: "Rochester shall maintain the roof, structure and exterior of the leased premises." It is our position that it is through no fault of ours that this damage occurred to the fencing, and that it be up to the landlord to repair it. (Emphasis added.)

As a general rule, evidence which results from communications between parties prior to trial which are incident to negotiations to settle a dispute are not admissible evidence in court even if no settlement is ever achieved. In *Rankin v. Phillippe*, 206 Pa.Super. 27, 211 A.2d 56 (1965), a case involving a defamation action we stated:

The plaintiff also argues that the statement of retraction prepared by the defendants and their subsequent refusal to publish that statement should have been admitted to show lack of reasonable grounds to believe in the truth of the defamatory matter and to show malice. *This retrac-*

*tion was prepared as part of settlement negotiations between the parties and was withdrawn when the plaintiff refused to sign the settlement agreement of which the retraction was a part. An offer of settlement is not admissible. As noted in the defendant's brief, this retraction, as part of a settlement offer, is no more admissible than would be an offer of a cash settlement.*

(Emphasis added.) Id., 206 Pa.Super. at 33, 211 A.2d at 59; *Lorenzo v. Redevelopment Authority of Philadelphia*, 24 Pa.Cmwlth. 593, 358 A.2d 130 (1976); *Williams v. Department of Highways*, 423 Pa. 219, 223 A.2d 865 (1966).

▮ The exclusionary rule has been discussed at McCormick on Evidence § 274, wherein it states:

To call into play the exclusionary rule, there must be an actual dispute, or at least an apparent difference of view between the parties as to the validity or amount of the claim. An offer to pay an admitted claim is not privileged. There is no policy of encouraging compromises of undisputed claims. They should be paid in full. If the validity of the claim and the amount due are undisputed, an offer to pay a lesser sum in settlement or to pay in installments would accordingly be admissible.

What is excluded? The offer of course, and any suggestions or overtures of settlement. How far do any accompanying statements of fact made by either party during negotiations or correspondence looking to settlement share the privilege? The generally accepted doctrine has been that an admission of fact in the course of negotiations is not privileged unless it is hypothetical—"we admit for the sake of the discussion only"—or unless it is expressly stated to be "without prejudice," or unless it is inseparably connected with the offer, so that it cannot be correctly understood without reading the two together.

This generally accepted doctrine of denying the protection of the exclusionary rule to statements of fact has serious drawbacks, however. It tends to discourage freedom of communication in attempting compromise, and, taken with its exceptions, it involves difficulties of appli-

cation. As a result the trend is to extend the protection to all statements made in compromise negotiations.

(Footnotes omitted.)

Pennsylvania follows traditional common law analysis regarding settlements or compromises. An example of this analysis is found in *Mannella v. City of Pittsburgh*, 334 Pa. 396, 6 A.2d 70 (1939).

> While an offer to pay a sum of money to compromise a dispute is not admissible in evidence to prove the sum offered was admitted to be due, *the distinct admission of a fact is not to be excluded because it was accompanied by an offer to compromise the* suit. *Sailor v. Hertzogg*, 2 Pa. 182, 185, 186; *Arthur v. James*, 28 Pa. 236; *Bascom v. Danville Stove & Manufacturing Co.*, 182 Pa. 427, 441, 38 A. 510; *Rabinowitz v. Silverman*, 223 Pa. 139, 72 A. 378.

(Emphasis added.) *Heyman v. Hanauer*, 302 Pa. 56, 152 A. 910 (1931); *Gogel v. Blazofsky*, 187 Pa.Super. 32, 142 A.2d 313 (1958).

The *Mannella*, supra, analysis is not appropriate in the instant case because the declarations made by appellant in their letter of October 31, 1977 states they *accept responsibility* for certain damages. The letter does not indicate a "distinct admission" of fault.

Similarly, we have stated it would be possible to infer that negotiations to settle or compromise were initiated by the letter from appellee. Appellant seeks to prevent the introduction of evidence of his October 31, 1977 letter because it was a representation of settlement or compromise negotiations. Such an offer appears not to be permitted under Pennsylvania law. Our Supreme Court stated in *Woldow v. Dever*, 374 Pa. 370, 376, 97 A.2d 777, 781 (1953):

> The testimony relating to settlement referred to by appellants in their first assignment of trial error was given by defendant and the attorney who represented him in the real estate transaction. The objection made at trial by plaintiff's counsel was that the testimony was irrelevant. A compromise offer of settlement is inadmissible when offered against the party who made the offer of

settlement. *Berry v. Heinel Motors, Inc.*, 162 Pa.Super. 52, 56 A.2d 374. In the instant case it was defendant who made the offer to settle and who introduced the testimony complained of as to such offer. Even if the admission of such testimony would ordinarily be deemed error, appellants are in no position to complain because it was plaintiff's witness Greenblatt who first introduced the subject of settlement into the trial when he testified extensively on direct examination concerning such settlement negotiations, and in his testimony stated substantially the same facts as were testified to by defendant and his counsel. Greenblatt's testimony could have had a prejudicial effect upon the jury since it could have been construed as an admission of liability by the defendant. In view of this and under the circumstances surrounding the settlement negotiations, we think the defendant was entitled to introduce evidence of his version of the incident. As it turned out, there was no material difference in the two versions presented. It cannot be said that the appellants were prejudiced by the introduction of the evidence complained of.

This analysis is inapposite to the instant case. While appellant did seek to prevent admission of the October 31, 1977 letter as evidence of an offer to settle or compromise, that action was only taken in light of appellee's letter of August 31, 1977 which under our analysis was the offer to compromise or settle. Appellant's letter was merely a response to the August 31, 1977 letter.

Furthermore, Pennsylvania law requires a very clear declaration by the parties in their communications or inferred from their actions that they offer to settle or compromise. This requirement is a reflection of common law principles which we articulated in *Durant v. McKelvey*, 187 Pa.Super. 461, 144 A.2d 527 (1958).

There is little doubt that appellee's reference to the receipt of the $700 check and his refusal to accept the same referred to an offer of compromise. Even if there were any doubt on this score, the trial judge in his charge

made it crystal clear that an offer in compromise was made. This was clearly error. *It has long been established in this Commonwealth that an offer to compromise a claim, not accepted, cannot be introduced into evidence by the plaintiff.* The reason for this rule was stated early in the case of *Slocum v. Perkins*, 3 Serg. & R. 295: "The defendant is not to be affected, even by an offer to compromise, unless his offer is not accepted by his adversary. Such offers are not to be discouraged because they often produce peace; but if rejected by the plaintiff, the defendant is at full liberty to make his defense just as if the offer had not been made. The reason is plain. A man who is conscious, that he is in the right, had better give up something than stand the hazard and expense of a suit. The offer to compromise, therefore is not evidence that the defendant thought himself in the wrong. The point has often occurred and the law is settled." See, also, *Folk v. Schaeffer*, 180 Pa. 613, 37 A. 104; *McJunkin v. Kiner*, 157 Pa.Super. 578, 43 A.2d 608; *Woldow v. Dever*, 374 Pa. 370, 97 A.2d 777; *Shipley v. Pittsburgh & L. E. R. Co., D. C., [D.P.]* 83 F.Supp. 722.

The court below, instead of refusing to admit any evidence of the offer of compromise actually compounded the error by specifically referring to it in the charge. On this ground alone, the judgment must be reversed. However, there was a question as to whether the defendant should not prevail on his counterclaim. There facts were conflicting enough to have a jury pass on this question. But by precluding any consideration of the defendant's counterclaim as a matter of law, the court below undertook that obligation and right which belongs properly to the jury. This was error and we cannot conclude that such a charge was harmless error when considered in connection with the charge on the compromise offer.

Thus, the decisions of our Supreme Court and this court demand that we reverse the trial court's decision. We hold that under existing precedent the letter of October 31, 1977 should not have been admitted.

Next, the appellant contends the instructions to the jury regarding attorney's fees were improper.[5]

The procedures used by a court when opening a judgment are clear. Pa.R.C.P. 2958(f) states:

(f) The lien of the judgment or of any levy or attachment shall be preserved while the proceedings to strike off or open the judgment are pending.

The accompanying explanatory note to Rule 2958 specifically regarding § (f) indicates:

An order of court opening judgment does not impair the lien of the judgment or of any execution issued on it, although the court may stay the execution pending final disposition of the proceeding. 7 Stan.Pa.Prac. 172, 174 §§ 138, 142. To the contrary, an order of court striking a judgment annuls the lien of the judgment or of any execution issued on it. 7 Stand.Pa.Prac. 244 §§ 223, 224.

However, the mere filing of a petition to open or strike a judgment does not affect the lien of the judgment or of any execution, subject, of course, to the power of the court to stay execution pending decision on the petition. Subdivision (f) has been added to Rule 2959 to restate this principle.

Thus, the judgment does remain effective even after it has been opened unless it is struck by order of court. *Sanctis v. Lagerbusch*, 213 Pa.Super. 483, 249 A.2d 919 (1968). The judgment herein was, "opened and set aside" by consent order of June 28, 1978. While it is not certain what the term "set aside" intends, it is clear that disputes involving a confession of judgment are strictly construed against the party benefiting from the clause. *Florida Crab House, Inc. v. Hake*, 259 Pa.Super. 230, 393 A.2d 801 (1978). Therefore, we assume the intention was to strike the judgment.

5. The judgment as confessed consisted of:

| | |
|---|---|
| Principal sum | $37,944.49 |
| Attorney's Fees | 3,794.45 |
| Total | $41,738.94 |

The jury verdict totaled $48,668.40.

■ A judgment which has been stricken ceases to exist. The terms of any agreement which resulted in that judgment are no longer in effect. Thus, no attorney's fee should have been assessed. Alternatively, if we do not assume the judgment was stricken, we still must determine whether attorney's fees provided under the lease agreement, where a confession of judgment is entered, continues to exist and operate when that judgment is opened on petition of the confessor and a different procedure is pursued by the holder of the judgment who continues to seek a remedy.

■ Attorney's fees will only be awarded under limited circumstances. As our Supreme Court stated in *Chatham Communications v. General Press Corp.*, 463 Pa. 292, 344 A.2d 837 (1978):

"Over and over again we have decided there can be no recovery for counsel fees from the adverse party to a cause, in the absence of express statutory allowance of the same..." *Smith v. Equitable Trust Co.*, 215 Pa. 413, 417, 64 A. 591, 592 (1906), or clear agreement by the parties, *Fidelity-Philadelphia Trust Company v. Philadelphia Transportation Company*, 404 Pa. 541, 548, 173 A.2d 109, 113 (1961), or some other established exception, see *Hempstead v. Meadville Theological School*, 286 Pa. 493, 134 A. 103, 49 A.L.R. 1145 (1926). *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 896 (1965).

Id., 463 Pa. at 300–301, 344 A.2d at 842.

■ The operative terms of the lease agreement are:

For value received and forthwith on every default or payment of rent by Mulach under this lease, or on any and every breach of covenant or agreement by Mulach under the terms of this lease, *Mulach does hereby empower any attorney of any court of record within the United States or elsewhere, to appear for Mulach and with or without declaration filed, confess judgment against Mulach, and in favor of said Rochester, its successors or assigns, as of any term, for the sum due by reason of said default in the payment of rent, including unpaid rent for the balance of the term if the same shall have become due and payable*

*under the provisions herein, and/or for the sum due by reason of any breach of covenant or agreement by Mulach herein, with costs of suit and attorney's commission of 10% for collection, and forthwith issue writ or writs of execution thereon with release of all errors,* and without stay of execution, and inquisition and extension upon any levy and sale by virtue of any exemption law now in force of which may be hereafter passed is also expressly waived by Mulach. In case of violation of any of the covenants or agreements in this lease by Mulach, Mulach further, at the option of Rochester, authorizes and empowers any such attorney, either in addition to or without such judgment for the amount due according to the terms of this lease, to appear for Mulach and confess judgment forthwith against Mulach, and in favor of Rochester, in an amicable action of ejectment for the promises above described, with all conditions, fees, releases, waivers of stay of execution and waiver of exemption to accompany said confession of judgment in ejectment as set forth herein for confession of judgment for said sum or sums due; and authorizes the entry of such action, confession of judgment therein, and the immediate issuing of a Writ of Possession and Writ of Execution for the amount of such judgment and costs, without leave of Court, and Rochester may without notice re-enter and expel Mulach from the premises, and also any person holding under it, and in each case, this lease is a true copy thereof shall be a sufficient warrant of any person.

A determining of the term, or and receipt of rent after default, or after judgment or after execution, shall deprive Rochester of other actions against Mulach for possession or for rent or for damages. *Rochester may use the remedies herein given or prescribed by law, or both.* Waiver of a default or breach shall not be construed as a waiver of any subsequent default or breach.

(Emphasis added).

The attorney's fees clearly refer to their costs incurred by him relating to the imposition of the confession of judgment

and collection of that judgment. Because the lease provides for the use of remedies provided by agreement—confession of judgment—"or those prescribed by law," we find the provision of attorney's fees was intended or understood by all parties to mean that the fee would attach to any judgment however collected.

In *Edward Bershad Co. v. Babe's Bar, Inc.*, 254 Pa.Super. 477, 386 A.2d 50 (1978), we articulated the following standard:

> Moreover if any doubt exists regarding the propriety or effect or a warrant of attorney authorizing confession of judgment, that doubt must be resolved against the party in whose favor the warrant is given.

Id., 254 Pa.Super. at 481, 386 A.2d at 52. The policy of strictly construing contracts which contain confession of judgment, as indicated above and in *Chatham,* supra, and *Florida Crab,* supra, oblige us to conclude that the provision providing for attorney's fees was operative once the judgment was opened, "set aside" and trial was held. The contract very clearly provides the attorney a 10% fee for collection of a judgment. Accordingly, the trial court's instructions were correct.

In light of our discussion, we reverse and remand for a new trial.

MONTGOMERY, J., files dissenting opinion.

MONTGOMERY, Judge, dissenting:

I must respectfully dissent. In my opinion, the lower court did not err in its admission of the October 31, 1977 response letter from Appellant's counsel to Appellee's counsel.

Contrary to the conclusion reached by my Brethren in the Majority that the October 31, 1977 letter constituted an expression of settlement or compromise, I believe that letter merely expresses an admission of responsibility by Appellant for several of the deficiencies and problems set forth in the Appellee's counsel's letter of August 31, 1977. The reply letter from Appellant's counsel, which is set forth at length

in the Majority Opinion, did not contain any single sentence, paragraph, or thought communicating either a proposal to settle or compromise the dispute between the Appellee and the Appellant, or a response to any offer of settlement or compromise. Accordingly, I do not believe that our Court needs to reach the issue of whether or not the letter is admissible as a statement made in the context of settlement negotiations. Rather, as the letter merely sets forth, in its relevant parts, admissions of responsibility by the Appellant, I conclude that it was properly allowed into evidence on that ground.

I also disagree with the Majority holding that the letter in issue, even if it were considered to communicate matters touching on settlement or compromise, should not have been admitted under prevailing legal precedent in our Commonwealth. The Majority Opinion notes that our Supreme Court has adopted the traditional common law analysis regarding the admission of such documents. As the Majority admits, in *Mannella v. City of Pittsburgh*, 334 Pa. 396, 6 A.2d 70 (1939), the Court stated: "While an offer to pay a sum of money to compromise a dispute is not admissible in evidence to prove that the sum offered was admitted to be due, the distinct admission of a fact is not to be excluded because it was accompanied by an offer to compromise the suit." 334 Pa. at 403, 6 A.2d at 73. That rationale was based upon long-standing case precedent in this Commonwealth, including *Sailor v. Hertzogg*, 2 Pa. 182, wherein the Supreme Court, in 1846, stated:

It is never the intendment of the law to shut out the truth, but to repel any inference which may arise from a proposition made, not with the design to admit the existence of a fact, but merely to buy one's peace. If, however, an admission is made because it is a fact, the evidence to prove it is competent, whatever motive may have prompted the declaration. If A. offers to B. ten pounds in satisfaction of his claim of a hundred pounds, merely to prevent a suit, or purchase tranquility, this implies no admission that any sum is due, and therefore

the testimony to prove the fact must be rejected, because it evinces nothing concerning the merits of the controversy. But if A. admits a particular item in the account, or any other fact, meaning to make the admission as being true, this is good evidence, although the object of the conversation was to compromise an existing controversy. 2 Pa. at 186.

That view also finds support in: *Heyman v. Hanauer*, 302 Pa. 56, 152 A. 910 (1930); *Rabinowitz v. Silverman*, 223 Pa. 139, 72 A. 378 (1909); *Arthur v. James*, 28 Pa. 236 (1857); and *Gogel v. Blazofsky*, 187 Pa.Super. 32, 142 A.2d 313 (1958).

Instead of following this well-recognized line of precedents, the Majority has concluded that the established standard is not applicable as the letter in issue does not contain a "distinct admission" of fault. The Majority reaches the conclusion that it is possible to "infer" that the letter was in response to an offer of settlement or compromise from the Appellee's counsel. I most strongly disagree with such findings as I do not believe they are supported by the clear wording contained in each letter. More specifically, the Appellee's counsel, in his letter of August 31, 1977, alleged numerous deficiencies in the Appellant's maintenance of the leased premises. In response to many such allegations, Appellant's counsel repeatedly responded, *in toto*, in his October 31, 1977 letter: "Mulach accepts responsibility." One simply cannot imagine a more clear example of an admission—"distinct" or otherwise. There appears to me to be no legal basis for excluding such admissions in view of the mandatory legal precedent established in *Mannella v. City of Pittsburgh, supra*, and the other cases previously cited. This is so *even if* the letter in issue *also* contained an offer of settlement or compromise. Thus, even if I agreed with my Brethren that the October 31, 1977 reply letter included matters touching on the subjects of settlement or compromise, I would nevertheless conclude that the clear and unqualified admissions set forth therein were properly

admitted into evidence by the trial judge, under directly applicable legal precedents.[1]

I agree with the conclusion reached by the Majority as to the propriety of the jury's award of attorney's fees against the Appellant. Therefore, I believe an affirmance would be appropriate in this case.

---

1. I also note that McCormick on Evidence, § 274, as pointed out in the Majority Opinion, states: "The generally accepted doctrine has been that an admission of fact in the course of negotiations is not privileged unless it is hypothetical—'we admit for the sake of the discussion only'—or unless it is expressly stated to be 'without prejudice' or unless it is inseparably connected with the offer, so that it cannot be correctly understood without reading the two together." While McCormick proceeds to criticize this prevailing doctrine, our Supreme Court has not departed from it, and we are not free to ignore it, as the Majority has in this case.