# H. Clay Bascom *v.* The Danville Stove & Manufacturing Company, Appellant.

[Marked to be reported.]

*Contract—Acceptance or refusal of goods purchased—Notice of nonacceptance—Effect of alterations—Warranty—Damages—Set-off—Charge of the court.*

In an action to recover the price of patterns, sold without an express warranty, where the defendant alleges that he suffered damages by reason of their unfitness, and the court, after instructing the jury that the patterns should be reasonably fit and suitable for the purpose for which they were designed, adds, "if they were not, and the defendant by reason thereof has sustained damage to an amount equal to, or in excess of, the contract price, then you must find for the defendant," it is not error to further charge that if the jury should find that the defendant retained and used the patterns, and the damages were less than the contract price, " then if the patterns have any value for any purpose, notwithstanding their unfitness for the use for which they were intended, the plaintiff might be entitled to recover such value."  ·

In an action to recover the purchase price of patterns the evidence tended to show that for a considerable period defendant made changes in the patterns, and gave no notice of a refusal to accept them.    Subsequently defendant wrote as follows:  " We fear we cannot use them at all ; we must either be paid for the extra cost, or we will return the patterns.    Please

advise us what to do in the matter, and oblige." *Held,* that the letter could not be regarded as an absolute refusal to accept the patterns. .

In an action to recover the contract price of goods it is not improper to charge that if the jury should find that the plaintiff did not fully and entirely fulfill his contract, and that notwithstanding such failure the defendant received and accepted the goods for an unreasonable length of time before giving notice of such failure, and without offering to return them in as good condition as they were when received, then the plaintiff might recover the contract price, less the damage sustained by the failure.

Where a purchaser of an article makes alterations in it, such conduct is evidence of an assertion of ownership.

*Practice, C. P.—Point—Answer of court.*

Where the conclusion of a point does not necessarily flow from the premise contained in the first part of the point, it is not error for the court to refuse to affirm it.

*Corporations—Officers—Power to bind corporation.*

If a corporation holds out its officers as agents authorized to make a contract of a particular kind, it will be bound by such contract when made by the officers.

*Evidence—Offer of compromise.*

Where a part of a conversation has been given in evidence without objection, and no motion made to strike it out, the remainder of the conversation, containing distinct admissions of material facts, is admissible, although it also discloses an offer to compromise.

Argued March 1, 1897.     Appeal, No. 552, Jan. T., 1896, by defendant, from judgment of C. P. Montour Co., on verdict for plaintiff.     Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM and FELL, JJ.     Affirmed.

Assumpsit for goods sold and delivered.

At the trial it appeared that the suit was to recover the price of certain wood and iron patterns alleged to have been manufactured for and delivered to the defendant company upon its order.     The defendant claimed that the patterns arrived in a broken condition, were unskilfully made, were not in accordance with the specifications and could not be used.

J. Foster, a witness for defendant, after having testified at length, was asked this question by Mr. Hinckley, of counsel for plaintiff:

" Do you not know that Bascom's errand there—and the drift of the conversation—was his being paid for these patterns? A.  As I understood it, he came for the purpose of having pointed

out to him defects in his patterns. He may have wanted his pay. Q. Did he not come here to Danville for the purpose of getting his pay for these patterns? A. As I understood it, the object of Bascom's visit at that time was to see what defects there were in his patterns—for us to point out defects in the patterns. That is what I had notified him to come here for—to talk the matter over. Q. What was the windup of your interview? A. Well, the windup of our interview was that I made him a proposition or offer to pay him five hundred dollars and give him the patterns. Q. You offered that that day? A. Yes, sir. Q. What did he say? A. He said he would not settle it that way. Q. Did you at any time renew that proposition? A. I did. Q. When? A. Subsequently, I think by letter, I renewed the proposition."

By Mr. Scarlet of counsel for defendant: I object to this. My objection is this, that anything in the way of a proposition of settlement that is not accepted by the parties, cannot be evidence in the case.

By the Court: There is no pretense that the defendant is bound by it; but it is part of a conversation brought out or inquired of by the defendant. We overrule the objection, admit the evidence, note an exception for the defendant. [14]

By Mr. Hinckley: The proper motion now would be to strike out, but we have no objection to the record showing the objection made at the time the question was asked, and to having it ruled-in that way.

"Q. That proposition was afterwards renewed, you say? A. Yes, sir. Q. That proposition was renewed by the letter of May 15th. A. Yes, sir. I renewed it on my own responsibility."

The court charged in part as follows:

[We fail to discover anything in the testimony to support the defendant's claim of a special or express warranty of these patterns by the plaintiff; but the plaintiff by his testimony proves that the work he did or was to do and the patterns were to be first-class; and, in the absence of special or express warranty, the law implies that the patterns manufactured should be reasonably fit and suitable for the purposes for which they were designed. If they were not, and if the defendant by reason thereof has sustained damage to an amount equal to or greater

than the contract price, then you must find for the defendant.
But if you should find the damage sustained to be less than the
contract price or nothing, then, if the patterns have any value
for any purpose, notwithstanding their unfitness for the use for
which they were intended, the plaintiff might be entitled to
recover such value.] [1]

There has been a great deal of testimony in this case, and it
has been very tedious and troublesome to investigate the dif-
ferent claims set up by one party and by the other in reference
to these various and numerous patterns. The business of scan-
ning and scrutinizing all this testimony and of ascertaining from
it where the truth lies is peculiarly within your province. It is
your duty to recall to your minds all the testimony in the case,
both documentary and oral, and to give it such weight as you
believe it entitled to. If you can reconcile the testimony of the
witnesses and the written communications that took place be-
tween the parties so as to find them all consistent with the truth,
and not to find that anybody intended to misrepresent or to
swear falsely or make a mistake, it is your duty to do so; but
if the testimony be so conflicting that one party or the other
must evidently be mistaken, then it is your duty to give credit
where you think credit is due. . . .

[You will recollect that at least two of the defendant's wit-
nesses testified that these patterns were not in good condition
when received. If they were not in good condition when re-
ceived from the carrier company, whose fault or loss was that?
There is no evidence (that we recollect) that the plaintiff failed
to pack them properly or that they were not properly packed.
There is testimony that they were fastened to a followboard, and
no denial that that was a proper way to pack and ship. If
through the carelessness or mismanagement of the transporta-
tion company, the common carrier, the patterns were separated or
broken or otherwise injured, it would not be the fault of the plain-
tiff nor of the defendant but that of the common carrier.] [2]

[If you should find that the patterns were not made in full
compliance with terms of the contract, but that they were
received and kept, used and retained, for an unreasonable length
of time, without giving the plaintiff knowledge of it—we believe
there is no dispute as to the time the patterns were all received,
about the middle of October, and that they were held until some-

time in January following, a period of about three months, before notice—then, if you should find they were held for an unreasonable length of time, without notice to the plaintiff, although they were not fit for the purposes for which they were intended, the plaintiff would be entitled to recover, less the damage, if any, for failure to comply with the contract.   Just at this point we should say to you that damages cannot be set off unless there is some satisfactory proof of them, something more than a general allegation, some data given you by which you can make an estimation or calculation of their amount.] [3] There was some testimony about two weeks' work, and in a statement by Bascom, we think, something about a matter that could be remedied for a dollar and a half.   Such items, where the proof is specific and certain, might be set off.   If the defendant has shown any items of damage such that you can arrive at the total amount of damage, to such amount the defendant is entitled by way of set-off.

To recapitulate, gentlemen of the jury : If you find from the evidence that the plaintiff has fully and entirely complied with the contract on his part, made and delivered the patterns according to the contract and specifications, then he would be entitled to recover the contract price with interest from the time it was due and payable—in other words, the full amount of his claim.

[If you should find from the evidence that the plaintiff did not fully and entirely fulfil the contract on his part, but should also find that the defendant, notwithstanding such failure, received and accepted the patterns and retained and used them for an unreasonable length of time before giving notice to the plaintiff of such failure and without offering to return them in as good condition as they were in when received by the defendant, then the plaintiff may recover the contract price, less the damage, if any, which the defendant company has sustained by the failure of the plaintiff to make and provide the patterns in accordance with the contract and specifications.

You will understand that in either of these two cases or alternatives the plaintiff would recover the full amount of his claim with interest, but in the second, less the damage proved by the defendant.] [4]

Thirdly, if you should find from the evidence that the patterns were so inferior in quality and manufacture, and so far

from being in conformity with the contract and specifications relating to the same, as to be entirely worthless and useless to the defendant company, and that the defendant so notified the plaintiff and offered within a reasonable time to return the same or to hold them subject to his order, then your verdict should be in favor of the defendant.

Defendant's points and answers thereto among others were as follows:

3. If there is a total or partial failure of the performance of the contract in the kind or quality of the workmanship so as to render the patterns unfit for the uses intended, and unprofitable to the defendant company, and the jury so find from all the evidence, there can be no recovery by the plaintiff in this case. *Answer:* That point is refused. [5]

4. If the contract is not performed according to the specifications, in that material parts have been omitted, or that they have been changed, so as to affect the value of the patterns and render the manufacture of the stove unprofitable and useless and worthless to the defendant, it is a non-compliance with the contract and the plaintiff cannot recover. *Answer:* That point is refused. [6]

6. The letter of January 8, 1891, is in no way binding upon the defendant company, it being shown that such letter was not signed by the company or by any one having authority to bind the said company. *Answer:* That point is refused. We will instruct you more particularly in reference to that matter farther on. [7]

7. If the plaintiff by his correspondence leading up to the contract made any representation as to the kind and quality of the goods, to wit: That the stove in question was to be a first class stove, and the testimony of H. C. Bascom and Galbraith to the the same effect, such statement enters into the basis of the contract, and if there is a nonperformance by the plaintiff, either in the character of the design and the execution of the work or an omission and departure from the specifications in material matters, the plaintiff cannot recover, and the verdict should be for the defendant. *Answer:* Considering this point as a whole it is not correct. [9]

9. In the discharge of his duty as president, Henry Vincent could not accept the work of the plaintiff without a fair test

and trial, or place upon his company a worthless machine, and if the jury find from all the evidence that such work has never been accepted by the company as a just and reasonable performance of the contract intended, there can be no recovery by the plaintiff, and the judgment should be for the defendant. *Answer:* That point is affirmed. But in reference to it we should say to you that the defendant company being a corporation, could act or contract only by its officers or agents; and when such company holds certain persons out to the public as authorized to act on its behalf, then such company or corporation, like an individual, will be bound by all the acts and contracts of such person which are done or made within the apparent scope of their agency or authority in reference to the business relating to the corporation. If you believe from the evidence in this case that the defendant corporation knowingly held out Vincent, the president of the company, and Schoch, the bookkeeper, or either or both of them, to the plaintiff, as agent or agents authorized to act and to make a contract of any kind, or contracts in what was done by them in relation to the making and furnishing of the patterns in question in this case, and that they did so act, then the defendant company will be bound by the terms of such contract or contracts as to whatever they did with reference to the business of the company. If these patterns were accepted under such authority by Vincent, the acceptance would be binding upon the company, and the defendant would be liable for any default made in testing or for any failure to test their value. Or a corporation, like the company defendant, may ratify unauthorized acts. Although you may believe from the evidence that the plaintiff performed the work and furnished the patterns in question for the defendant, at the request of one or more officers, members, agents or employees of the corporation defendant, not previously authorized to act or contract in reference thereto; still if you further believe from the evidence that the plaintiff performed that work, and the patterns were furnished to the company defendant with the knowledge and consent of the officers and agents of the corporation having charge and control of its property and affairs, and that the corporation received, accepted, used and held the patterns for an unreasonable length of time before notifying the plaintiff of its dissatisfaction, accompanied with an uncon-

ditional offer to return the same; then as a matter of law the company defendant may be held to have ratified the acts of such unauthorized persons, and it may be bound thereby. [10]

Plaintiff's points and answers thereto among others were as follows:

2. That if the defendant company received the patterns in question, and after such receipt began to alter or change the same, such act would be an assertion of ownership. *Answer:* This point is affirmed: Provided such change or alteration was made without authority or consent of the plaintiff. [11]

3. If the jury find that the patterns were delivered to the defendant by October 15, 1890, and that the defendant did not offer to return them (because of defects) before January 28, 1891, and that this offer was conditioned on the plaintiff paying to the defendant its cost incurred in altering the patterns, said offer would not be a defense to plaintiff's claim. *Answer:* That point is affirmed. [12]

4. If the defendant's offer to return the patterns was conditioned upon the plaintiff's paying the costs incurred by it in altering the patterns, and the plaintiff declined such conditional offer, and the patterns remained in the possession of the defendant for an unreasonable length of time, this would be evidence of the defendant's intention to retain the patterns, and the defendant would be liable for the price. *Answer:* This point is affirmed with the condition or exception that the defendant would be liable for the contract price, less the amount of damage, if any, sustained by the defendant by reason of the patterns not being in conformity to the contract, as under an implied warranty, as we have before instructed you. [13]

Verdict and judgment for plaintiff for $1,482.49. Defendant appealed.

*Errors assigned* were (1–7, 9–13) above instructions, quoting them; (14) rulings on evidence, quoting the bill of exceptions.

*Charles Chalfant* and *James Scarlet*, for appellant.—The contract in this case was for goods not yet in existence, but to be manufactured, and was therefore only an agreement to sell, and could have no greater effect, as a present sale, than a contract for goods that have ceased to exist: Tiffany on Sales, 24.

If a thing be ordered from the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose: Port Carbon Iron Co. v. Groves, 68 Pa. 149; Benjamin on Sales, sec. 988.

The contract was executory, and the ownership of property was not changed by it. The title to the latter remained in the plaintiff, subject to the defendant's inspection and acceptance of it: Jones v. Jennings Bros., 168 Pa. 493; Whitehall v. Wilson, 3 P. & W. 405; Gilchrist v. Rogers, 6 W. & S. 488; Bisbing v. Third National Bank, 93 Pa. 79.

If the seller is bound to deliver at the buyer's residence or at a distant place, the carrier is the seller's bailee for the purpose of carriage, and a delivery to the carrier is not a delivery to the buyer: Tiffany on Sales, 195.

If the trial judge states to the jury a fact which was unauthorized by the evidence, and was misleading, it is an error for which the Supreme Court will reverse: Penna. R. Co. v. Alvord, 128 Pa. 42.

In view of the evidence, the question of holding on to the goods an unreasonable length of time, without notice, was not only not fairly submitted, but erroneously submitted, and this was error. When a jury is misled by the charge of the court the verdict will be reversed: Skinner v. McAllister, 4 Cent. (Sup. Ct. of Pa.) 750; Musselman v. R. R. Co., 2 W. N. C. 107.

An erroneous statement of the evidence upon a pivotal fact in the case is cause for reversal, and this though inadvertently made, and inconsistent with the general charge: Steinbrunner v. Ry. Co., 146 Pa. 504.

The answer of the court to a point which is neither an affirmance or denial, and leaves the jury without instructions, is error: Tyrone Mfg. Co. v. Cross, 128 Pa. 636.

An offer of compromise not accepted is not evidence as an admission: Slocum v. Perkins, 3 S. & R. 295; Arthur v. James, 28 Pa. 236; Tryon v. Miller, 1 Whart. 11.

*C. G. Voris* and *H. M. Hinckley*, for appellee.—When the contract is executory, as it always is when a particular article is ordered without being seen, from one who undertakes that it

shall be for a given quality or description, and the thing sent, as such, is never completely accepted, the buyer is not bound to keep it or pay for the article on any terms. But when the thing sent is completely accepted, a different rule prevails. When the defendant receives the thing sent, and exercises ownership over it, does work upon it and expends money upon it, which he wants the plaintiff to reimburse him for, the plaintiff is entitled to recover something, unless, as the court said in this case, such expenditure or damage amounted to as much or more than the contract price; and it would have been error for the court to have charged otherwise: Fogel v. Brubaker, 122 Pa. 7; Frankenfield v. Freyman, 13 Pa. 58; Dailey v. Green, 15 Pa. 126.

Every charge must be taken as a whole: Little Schuylkill Navigation Co. v. French, 81* Pa. 366; Reese v. Reese, 90 Pa. 89; Smith v. Meldren, 107 Pa. 348.

As between vendor and vendee, the right of property and the consequent risk vests, on delivery of the goods purchased to the designated carrier, packed and directed according to usage or instruction: Wilson v. Wilson, 26 Pa. 395; Perlman & Co. v. Sartorius & Co., 162 Pa. 320; 2 Benj. on Sales, sec. 925.

The buyer's approval may be implied from the mere neglect to notify, or from any act or course of conduct in relation to the property, which necessarily involves an unequivocal assertion of ownership: Hickman v. Shimp, 109 Pa. 20; Fogel v. Brubaker, 122 Pa. 15; Dailey v. Green, 15 Pa. 126; Howard v. Hayes, 47 N. Y. Super. Ct. 89.

Where the instrument is ambiguous, or the principal has by usage authorized the signature, parol evidence is admissible to prove that the party signing has done so, for and as the authorized agent of the principal: 1 Am. & Eng. Ency. of Law, 391; Robb v. Penna. Co., 3 Pa. Superior Ct. 259; Dougherty v. Hunter, 54 Pa. 382; Steamboat Co. v. McCutcheon et al., 13 Pa. 15.

If an admission is made because it is a fact, the evidence to prove it is competent, whatever motive may have prompted the declaration: Sailor v. Hertzogg, 2 Pa. 186; 1 Wharton on Law of Evidence, sec. 539; Greenleaf on Evidence, sec. 192; Thomas v. Morgan, 2 C. M. & R. 496.

Opinion by Mr. Justice Green, October 11, 1897 :

We discover nothing wrong in the first assignment of error in this case. There certainly was no express warranty established on the trial, but the learned court below charged that the patterns should be reasonably fit and suitable for the purpose for which they were designed, and added, " If they were not, and the defendant by reason thereof has sustained damage to an amount equal to, or greater than, the contract price, then you must find for the defendant." Certainly this is all the defendant could ask. When the court further said that if the jury found that the damage was less than the contract price, " then if the patterns have any value for any purpose, notwithstanding their unfitness for the use for which they were intended, the plaintiff might be entitled to recover such value," the connection in which this was said must be considered. The whole subject had been gone over in the immediately preceding part of the charge as to whether there had been an acceptance or refusal to accept, and whether the patterns had been retained and used, or changes had been made in them by the defendant, and these subjects were carefully and correctly submitted to the jury. In that connection the court used the language complained of, in the first assignment. The court had just previously said, " If you find from the evidence that they (the patterns) were not in full compliance with the contract and specifications, then the plaintiff is not entitled to recover the full amount named in his contract, unless you further find that the defendant company accepted and held the patterns for such length of time and in such manner as thereby to make it so liable." The learned judge then said, " or if the purchaser keeps the property, when sued for the price he may set up the breach of implied warranty and set off his damage, if any, against the plaintiff's claim, even to the full or equal amount of the price or sum agreed to be paid for the same. Whether the defendant accepted and used, or changed, or undertook to change these patterns, and retained them for an unreasonable time, exercising acts of ownership over them, we leave to you under all the evidence in the case." It was in this direct connection that the court used the language in question. That there was evidence enough to leave these questions to the jury is beyond all doubt. There was so much of it that it is not at all necessary to re-

capitulate it. It was the alternative of the defendant having re-
tained the patterns and used them that the judge was speak-
ing of when he said, "then if the patterns have any value for
any purpose, notwithstanding their unfitness for the use for
which they were intended, the plaintiff might recover such
value." Understood in this way there was no error in the charge.

We cannot possibly see any error in the matter contained in
the second assignment. The gist of the alleged error is that
the court said if the patterns were injured in the course of the
transportation the fault was that of the carrying company, and
not the fault of either the shipper or the consignee. It was but
a statement in the abstract, and as such it was literally correct.
There was no question of delivery as between the vendor and
vendee at issue, and authorities on that subject have no rele-
vancy.

In the third assignment the only error claimed was the alleged
misstatement by the court as to the time the patterns were re-
ceived and held by the defendant. The evidence shows that the
court was correct in saying they were all received about the
middle of October. This is strictly correct. The court did not
say or intimate that between October 15 and some time in
January following there was no notice of any defects by defend-
ant to plaintiff. What was plainly intended when the court
spoke of the defendant's holding without notice from October
until January was, without notice. of refusal to accept. The
context would be meaningless without this. Now during that
period there was no notice of that kind. Prior to October 15,
there had been complaints made in some of the letters, of defects
in the work, but not of any refusal to accept. On the contrary,
letters written by the defendant during that period clearly indi-
cated that the defendant expected to retain the patterns. The
letter of September 30, 1890, was certainly to this effect. So
were the letters of October 2 and 6. The latter contained this
expression, "We will be glad to receive all the patterns as soon
as possible, for we will make changes in Res. to conform without
suggestion." There was an abundance of testimony that the
defendant did make changes in the patterns, and intended to do
so, but there was no testimony that during this period it intended
refusing to accept them. These remarks are equally applicable
to the twelfth and thirteenth assignments. The letter of de-

fendant of January 28, 1891, in which it said : "We fear we cannot use them at all, we must either be paid for the extra cost or we will return the patterns, please advise us what to do in the matter and oblige," was certainly not a refusal to accept them. At the very best it was but an alternative suggestion that the defendant should be paid the extra cost of making changes or else it would be obliged to return them, and it asked the plaintiff's advice as to what it should do. Clearly such a letter is not to be regarded as an absolute refusal to accept. We cannot sustain any of these three assignments.

The language complained of in the fourth assignment is predicated of a finding by the jury that the plaintiff did not fully and entirely fulfil the contract on his part, but that, notwithstanding such failure, the defendant received and accepted the patterns for an unreasonable length of time before giving notice of such failure, and without offering to return them in as good condition as they were, then the plaintiff might recover the contract price, less the damage sustained by the failure. We see nothing wrong in this as a legal proposition, and the only question is whether there was evidence upon which such a question could be submitted to the jury. We think there was, and hence there was no error in what the court said.

As to the fifth assignment it is to be observed that the third point of the defendant is too broadly stated. The conclusion that there could be no recovery in this case does not necessarily flow from the premise contained in the first part of the point. The negative answer of the court must be taken in reference to the facts in evidence, and in view of those facts, and the possible finding of the jury in reference to them, the point should not have been affirmed without qualification. There certainly was evidence, quite considerable evidence, that the defendants did receive the patterns during a considerable period of time, that it did make changes in them, that it did retain them and use them for several months, without making a specific offer to return, and these facts if found by the jury would in a most important manner qualify the answer to be made to the defendant's third point. In view of these considerations we cannot say there was error in the answer. The same remarks are true of the sixth assignment and the ninth, and we therefore cannot sustain any of these assignments.

We could not possibly sustain the seventh or tenth assignment as there was plenty of evidence of acts done and letters written, both by Vincent and Schoch, as president and book-keeper, to carry to the jury the question of their authority to write the letters and do the acts in question. What the court said on this subject was entirely correct. The question was fairly left to the jury, and they have found for the plaintiff, on ample testimony, to sustain their finding. These assignments must be dismissed.

There was considerable testimony as to alterations and changes made in the patterns after they were received by the defendant. The plaintiff's second point requested an instruction that acts of that kind done by the defendant after receipt of the patterns would be an assertion of ownership. We can see no error in this. Surely such action cannot be reconciled with an intent to refuse the patterns and return them. They are the proper and legitimate acts of persons who are owners. They are not the acts of persons who neither are, nor expect to be, owners. The proposition of the point is abstract, and in that sense it is strictly true. In the concrete it depends upon the evidence which, of course, is for the jury. The eleventh assignment is not sustained.

It does not seem to us that the fourteenth assignment is correctly stated. The testimony complained of was not admitted under objection. Nor was the question to the witness an attempt to prove an offer of compromise. The witness, Foster, was being cross-examined in reference to a conversation which had been introduced by counsel for the appellant. Having answered a number of questions as to what the conversation was, the witness was asked by counsel for the appellee, " What was the wind-up of your interview? A. Well, the wind-up of our interview was, I made him a proposition or offer to pay him $500 and give him the patterns." Neither to the question nor to the answer was there any objection. The witness was then asked, " You offered that, that day? A. Yes, sir. Q. What did he say? A. He said he would not settle that way. Q. Did you at any time renew that proposition? A. I did. Q. When? A. Subsequently I think by letter, I renewed the proposition." At this time an objection was first made, " that anything in the way of a proposition of settlement, that is not accepted by the parties, cannot be evidence in the case." There was no motion to strike out

the testimony already in, and no objection or exception to the admission of that evidence. The witness in answer to the last question simply said that the proposition was renewed on his own responsibility by letter of May 15. But it does not appear that that letter was given in evidence, and, if not, its contents were not before the jury. The oral testimony of the witness as to the conversation, having been voluntarily given by the witness without objection or exception, and no motion made to rule it out, we do not see how we can sustain an assignment of error to its admission. But in any event what was said on this subject was part of a conversation which had been given in evidence by the defendant, and the question was not an offer to prove a compromise, and the part of the answer of the witness which disclosed an offer to pay a sum of money less than the claim, was inconsistent with the claim made by the defendant, that it held the patterns only subject to the order of the plaintiff. It tended to contradict the testimony and the theory of the defendant that it never had accepted the patterns, and had no ownership of them. Being therefore in the nature of the admission of a fact inconsistent with the defense, the question is assimilated to the question raised in Arthur v. James, 28 Pa. 236. There a letter was offered in evidence which contained an unaccepted offer of compromise. It was objected to on that ground, but we held it was admissible, because although it contained an offer of compromise it also contained admissions of material facts. In the opinion, LEWIS, C. J., said: " In the case before us the letter received in evidence contained distinct admissions of material facts. These facts cannot be excluded because the same letter closes with an offer of a certain sum of money to settle the matter." In the case now before us, if the objection had been promptly made to the testimony or to the offer, by itself, a different question might have arisen. But as no such objection was made, the part now objected to being part of an entire conversation, it seems to us, cannot be excluded becauses it discloses an offer to compromise. The fourteenth assignment is not sustained.

Judgment affirmed.