286 F.2d 65
 In the Matter of EVANSVILLE TELEVISION, INC., Debtor.
Rex SCHEPP and Benjamin F. Shepp, Appellants,
v.
PRODUCERS, INC., et al., Appellees.
Stephen W. LANGMADE, Appellant,
v.
PRODUCERS, INC., et al., Appellees.
Rex SCHEPP, Petitioner,
v.
Honorable Cale J. HOLDER, Judge of the United States
District Court for the Southern District of
Indiana, Evansville Division, Respondent.
 Nos. 13024, 13056, 13168.
 United States Court of Appeals Seventh Circuit.
 Jan. 5, 1961.
 
 Paul Y. Davis, Indianapolis, Ind., Davis, Hartsock & Wright, Indianapolis, Ind., of counsel, for appellants. Stephen W. Langmade, Phoenix, Ariz., in pro. per.
 Isidor Kahn, Harry P. Dees, Evansville, Ind., for debtor-appellee. Kahn, Dees, Donovan, Kahn & Shrode, Evansville, Ind., of counsel.
 Leonard Gesas, Chicago, Ill., John E. Early, Isadore J. Fine, Paul F. Arnold, Evansville, Ind., Michael Gesas, Chicago, Ill., of counsel, for appellees Producers, Inc. and others.
 John K. Rickles, Indianapolis, Ind., Charles H. Sparrenberger, Evansville, Ind., Bamberger & Feibleman, Indianapolis, Ind., and Fine, Hatfield, Sparrenberger & Fine, Evansville, Ind., of counsel, for appellee, Douglas H. McDonald, Trustee.
 John L. Carroll, Evansville, Ind., Johnson and Carroll, Evansville, Ind., of counsel, for appellees Red Spot Paint & Varnish Co., Inc. and others.
 Before DUFFY, KNOCH and CASTLE, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 Rex Schepp and Benjamin F. Shepp, appellants, stockholders of Evansville Television, Inc., seek by their appeal (No. 13024) to set aside an order of the District Court entered February 12, 1960 in a chapter X Reorganization Proceeding, 11 U.S.C.A. 501 et seq., which approved and declared filed in good faith a petition to reorganize the subject corporation.[1] The appeal also seeks reversal of a February 10, 1959 order enjoining the calling or conducting of a meeting of stockholders for the purpose of electing directors until further order of court.
 
 
 2
 The appeal (No. 13056) by Stephen W. Langmade, also a stockholder, seeks to set aside the order of February 12, 1960.[1]
 
 
 3
 The petition for reorganization of the subject corporation invoked the District Court's jurisdiction under 11 U.S.C.A. 526, 530 and 531, was filed by creditors, and alleged insolvency and the commission of an act of bankruptcy within the preceding four months. The debtor corporation filed a consenting answer. Appellants Rex Schepp and Benjamin Shepp each filed a controverting answer. The District Court, after hearing evidence, made findings of fact and entered its conclusions of law on which the order of February 12, 1960 is based.
 
 
 4
 The appeals present the following contested issues:
 
 
 5
 (1) Whether the provision of 11 U.S.C.A. 526 which authorizes the filing of a petition for reorganization by 'three or more creditors' was satisfied.
 
 
 6
 (2) Whether the subject corporation was insolvent.
 
 
 7
 (3) Whether the petition was filed in good faith.
 
 
 8
 (4) Whether a timely appeal was perfected from the injunctive order and, if so, did the court err in entering such order.
 
 
 9
 The debtor, Evansville Television, Inc., was incorporated in 1951 with authorized capitalization of 25,000 shares of Class A no par voting stock and 25,000 shares of Class B equally participating no par non-voting stock. It is engaged in the operation of a television broadcasting station in Evansville, Indiana, under a temporary permit granted by the Federal Communications Commission on the VHF Channel 7, and is known as Station WTVW. The station began broadcasting in August of 1956. It was one of four applicants in 1952 for the one VHF channel in Evansville. It was awarded the channel on December 27, 1955. During pendency of the application others obtained construction permits for two UHF channels, one in Evansville and one in Henderson, Kentucky, and began broadcasting in 1953. Upon the grant of the VHF permit to the debtor corporation both UHF stations petitioned the Commission to revoke it on the basis that the superior signal would cause them great economic injury. These petitions were denied but there is pending before the Commission a Rule to Show Cause why the corporation should not be required to relinquish its temporary VHF permit and receive a UHF permit in lieu thereof.
 
 
 10
 At the time construction was authorized and the temporary VHF permit issued in December of 1955 Rex Schepp, his wife, mary Eaton Schepp, and his brother, Benjamin F. Shepp held approximately 72% Of the corporation's stock, including 16,875 shares of the Class A voting stock. Ferris E. Traylor, Freeman Keyes and John B. Moser, executor, held a total of 4,125 shares of Class A and 3,158 of Class B stock; various others, smaller amounts. All stockholders except the Schepps[2] were obligated on unpaid stock subscriptions. As a condition of paying the balance of their subscriptions Traylor, Keyes, Moser and another stockholder, Krueger, required a reallocation of the Schepp stock interest, a voting trust to control election of directors, and a buy-sell agreement. The agreement reduced the Schepp holdings to $15,000 shares of Class A stock, gave the minority group the option to purchase the Schepp stock at appraised value (not less than $15.00 per share) exercisable two years and ten days after WTVW went on the air, and placed all voting stock in the hands of Krueger, as trustee, to vote for a board of directors consisting of Rex Schepp and four members of the minority group, which was to continue until the option expired.
 
 
 11
 Schepp was made president and employed as general manager of the corporation. He had had previous experience in the television filed. Station facilities were constructed and WTVW went on the air in August of 1956. In November of 1956 Schepp was discharged as president and general manager. The reasons given, as shown in the corporation's minutes, were disloyalty, unfaithfulness, neglect of duties, wilful mismanagement and harassment of employees resulting in inefficient operation.
 
 
 12
 The purchase option expired August 31, 1958 without being exercised. The return of Schepp to control of the corporation at the February 1959 annual meeting was assured by reason of his control of the voting stock. There were various negotiations for the purchase from or sale to Schepp of the capital stock of the corporation. Traylor was willing to pay $10.00 a share for the stock.
 
 
 13
 Producers, Inc., one of the petitioning creditors, is a corporation to which the debtor corporation owes $300,000.00, plus interest, as evidenced by twenty-seven promissory notes. The notes were originally given to Ferris E. Traylor for loans and advancements made to the corporation when money was immediately needed, at most times to cover overdrafts, between December 12, 1956 and May 9, 1958. Traylor assigned them to Producers, Inc. on November 20, 1958.
 
 
 14
 Traylor Bros., Inc., a petitioning creditor, is a corporation engaged in the construction business. Schepp, while president, hired it in connection with the construction of the station facilities and improvement of its studios. The claim of Traylor Bros., Inc., in the amount of $65,675.16 is for work performed and materials furnished.
 
 
 15
 Industrial Contractors, Inc., a petitioning creditor, is a corporation engaged in the plumbing, heating and air conditioning and roofing business. The debtor corporation through its chief engineer issued direct orders to it for work and materials which were performed and furnished, and for which it issued invoices directly to the debtor corporation. The amount of its claim is $41,163.53.
 
 
 16
 The stock ownership of Traylor Bros., Inc. is 50% In Ferris E. Traylor and 50% In his brother. The stock of Producers Inc. is similarly owned. Traylor and his brother each own 25% Of the stock of Industrial Contractors, Inc., and the remainder is held by employees of the three companies.
 
 
 17
 Other creditors, who were permitted to intervene as petitioning creditors, are Carl Wolfe, d/b/a Ohio Valley Sound Co., Smith and Butterfield, Inc., and Red Spot Paint and Varnish Company, Inc.
 
 
 18
 The petition for reorganization was filed December 19, 1958.
 
 
 19
 The District Court, after exhaustive hearings extending over a period from February 26, 1959 to January 7, 1960, found and concluded that the corporation was insolvent and that the petition for reorganization was filed in good faith. In so far as these determinations rest on factual considerations they are not to be disturbed on review unless clearly erroneous. The District Court is charged with the duty of ascertaining the existence or non-existence of the fact. In re Loeb Apartments, 7 Cir., 89 F.2d 461, 463.
 
 
 20
 We have carefully reviewed the record and are of the opinion that the finding of insolvency is supported by substantial evidence including the testimony of an expert witness in the field of evaluating television and radio properties and that of a certified public accountant who had made extensive examination of the corporation's records. The evidence was ample that the corporation's assets were insufficient to meet its liabilities.
 
 
 21
 This Court had occasion to consider the criteria by which the 'good faith' requirement in chapter X proceedings is to be determined in In re Diversey Hotel Corporation, 7 Cir., 165 F.2d 655, 658.
 
 
 22
 It was there pointed out that what is meant in chapter X by 'good faith' is not the same as breach of fiduciary integrity but is a restriction on the use of this remedy to prevent its misuse. And it was pertinently observed that the District Court, charged with the duty of preventing this misuse being 'in a favored position, it can well judge of the disposition and intent of those who knock at its door and seek admission'.
 
 
 23
 There was testimony that the corporation had never had an annual profit, could not even approximate the payment of current liabilities, that attempts to get financing had been going on for two years with no avail and that the corporation was 'at the end of its rope' in so far as borrowing money was concerned, and could not go forward without reorganization. Traylor, who had advanced $300,000.00, testified that he would not 'put another dollar in the situation' without revision of the stock situation and capital structure. It is evident that there was a basis on thich the District Court's jurisdiction under chapter X could have been invoked in 'good faith'. And it is equally deducible from the record that the relationship between Traylor and Schepp if not acrimonious was at least unharmonious. Traylor was frank in admitting that an additional reason for the petitioning creditors filing the proceeding was 'the Schepp interests coming back into control of the corporation and in my opinion endangering the loans by upsetting the present management of the corporation'.
 
 
 24
 Appellants contend that the primary if not the sole reason for the filing of the petition was to wrest control from the Schepps. They urge, in effect, that we disregard the existence of the bona fide grounds for corporate reorganization and find clear error in the District Court's finding of good faith. In this connection we are importuned to accept as justification of such action factors such as the execution of a supporting affidavit filed with the petition on 'personal knowledge' by an affiant who it later developed did not have personal knowledge of the fact sworn to; the filing of a consenting answer of the corporation by a board of directors which included Traylor and the majority of which did not favor control of the corporation by the Schepps; attempts of Traylor and other minority stockholders to induce the Schepps to buy out Traylor's claims and the minority stock or sell the Schepp stock to them; and Traylor's transfer of the corporationhs notes to Producers, Inc.
 
 
 25
 The incident of the affidavit, which was corrected by a new affidavit, in our opinion had no bearing on the issue of good faith either as to the objective of the proceeding or intention of the petitioners. The consenting answer of the corporation is an equally attributable to the bona fide basis for seeking corporate reorganization as it is to a plan to coerce surrender of majority control to a minority group. The various negotiations relating to buy-sell agreements were, of course, attempts by Traylor as a major creditor (or as owner of a substantial interest in corporations which were major creditors) to collect the debt owed him and dispose of his interest or to retain a voice in the management of this corporation in which he had a heavy financial interest as such creditor. The fact that he offered $10.00 a share for the Schepp stock in an effort to protect his heavy investment is not indicative that he regarded the corporation solvent at the time but rather an expression of confidence as to the future of the corporation premised on his purchase of the Schepp stock and the latter's consequent disassociation from management. Appellants' contention that Traylor's assignment of the $300,000.00 in notes of the corporation to petitioning creditor, Producers, Inc., in and of itself establishes lack of good faith in the filing of the petition is based on the provision of 11 U.S.C.A. 546(1) that a petition shall be deemed not to be filed in good faith if 'the petitioning creditors have acquired their claims for the purpose of filing the petition.' But the only evidence presented on the purpose of the transfer[3] was that of Traylor who testified that the assignment was made so he could secure funds to settle a personal income tax situation.
 
 
 26
 Traylor's dissatisfaction with Schepp management may well have motivated his actions to insulate his investment from its resumption of control but under the circumstances here present we cannot say that the District Court was clearly in error in finding that the petition was filed in good faith. Here was an insolvent corporation with but a temporary permit to pursue the activities upon which its financial existence depended. And it was unable to obtain needed financing. The major creditors expressed willingness to convert their claims into stock to provide a financial structure which would enable borrowing. In addition there is nothing to link the intervening petitioning creditors with what appellants assert was a plan by the minority to wrest control from the Schepps. The District Court was justified in approving the petition and awaiting the facts that arise from a plan of reorganization. That plan must be fair and equitable, and feasible. 11 U.S.C.A. 621(2).
 
 
 27
 We find other arguments of appellants addressed to the issue of good faith equally devoid of merit. On this phase of the matter we conclude that there was substantial evidence to support the findings of the District Court and from our review of the record we are not 'left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 98 S.Ct. 525, 842, 92 L.Ed. 746.
 
 
 28
 Further, we find no error in the District Court's refusal to admit and consider evidence concerning the terms, and rejection by Traylor, of an offer to purchase the minority group's stock and pay the debts owed the corporations in which Traylor was interested. These negotiations occurred during a recess in the proceedings pursuant to the court's suggestion that a compromise settlement be attempted. Counsel for petitioners expressly conditioned undertaking compromise discussions on the understanding that 'it will not be used as evidence in this matter.'
 
 
 29
 Appellants rise a question as to whether the petition was filed by the requisite number of creditors. Under the provisions of 11 U.S.C.A. 526 which are here pertinent an involuntary petition for corporate reorganization if filed by creditors requires 'three or more creditors'. Appellants argue that Traylor's stock interest in Producers, Inc., Traylor Bros., Inc., and Industrial Contractors, Inc. requires, that for the purpose here involved, the three corporate entities must be regarded as but one; that Industrial Contractors, Inc. was but a subcontractor of Traylor Bros. Inc. and not a creditor of the debtor corporation; and that in any event the work performed by Industrial was unauthorized and created no liability in the debtor corporation.
 
 
 30
 We find it unnecessary to consider any of these arguments. Three additional creditors filed a petition to intervene while the issues raised by the controverting answers were in the process of being heard. They alleged that it was for their best interests that the chapter X proceedings be maintained and requested permission to intervene as 'petitioning creditors'. The District Court granted the petition and we find no error in its so doing. Assuming validity in any one of the three objections raised as to the status or qualification of the original petitioning creditors any deficiency so resulting was cured by the intervention.
 
 
 31
 Such intervention is authorized under 11 U.S.C.A. 607. Seaboard Terminals Corp. v. Western Maryland Ry. Co., 4 Cir., 108 F.2d 911, 914; and see dictum in In re Federal Fecilities Realty Trust, 7 Cir., 220 F.2d 495, 500-501. We do not agree with appellants that 11 U.S.C.A. 596 limits 607 so as to authorize intervention only after approval of the petition. And where a creditor has been properly permitted to intervene he is to be counted in determining the existence of the requisite number of creditors. Cf. Syracuse Engineering Co. v. Haight, 2 Cir., 110 F.2d 468; 6 Collier on Bankruptcy (14th ed.) 1424-5.
 
 
 32
 The February 12, 1960 order of the District Court approving and declaring the petition for reorganization filed in good faith is affirmed.
 
 
 33
 The injunctive order restraining the calling or conducting of a meeting of stockholders for the purpose of electing directors until further order of the court was entered February 10, 1959. The notice of appeal (13024) was not filed until February 23, 1960, more than one year later. Under 11 U.S.C.A. 47 interlocutory or final orders in proceedings in bankruptcy as distinguished from 'controversies arising in proceedings in bankruptcy' are appealable. The injunctive order was a 'proceedings in bankruptcy' order. Albin v. Cowing Pressure Relieving Joint Co., 317 U.S. 211, 212, 63 S.Ct. 170, 171, 87 L.Ed. 212. This Court has held that an order in a proceedings in bankruptcy from which an appeal may be taken, may be reviewed on appeal from that order only and may not be reviewed on a appeal from a subsequent order. In In re Trust No. 2988 of Foreman Trust & Savings Bank, 7 Cir., 85 F.2d 942, 943 we said:
 
 
 34
 'An order in bankruptcy proceedings, from which either an absolute or discretionary appeal may be had, may be reviewed only upon an appeal from that order and not on an appeal from a subsequent order. Fontana Mercantile Co., Inc., 62 F. (2d) 1047 (C.C.A. 9); Wheeler v. Smith, 30 F. (2d) 59 (C.C.A. 9); In re Kest, 78 F. (2d) 705 (C.C.A. 2); In re S. W. Straus & Co., 67 F. (2d) 605 (C.C.A. 2). Otherwise a party might permit the time within which to appeal from an interlocutory order to expire and then by an appeal from a final order, by indirection, achieve a review of something which it was not entitled to review.'
 
 
 35
 We adhere to the view above expressed. The time for appeal from the injunctive order ended not later than forth days after its entry. 11 U.S.C.A. 48. The appeal in No. 13024 in so far as it purports to include the injunctive order of February 10, 1959 is dismissed as untimely.
 
 
 36
 No. 13168 is an application by Rex Schepp to this Court for a writ of mandamus and prohibition directed to the District Court ordering that no further action be taken to hear, consider or approve a plan of reorganization of the subject corporation until the appeal in No. 13024 is determined, to set aside and expunge the injunctive order of February 10, 1959, or to sustain a pending motion to vacate such injunction or to rule upon such motion. Apart from the question of the propriety and availability of the remedies petitioner seeks to employ for the purpose indicated under the particular circumstances here involved our disposition of the appeal in No. 13024 requires denial of the petition for writ of mandamus and prohibition. Our affirmance of the District Court's order of February 12, 1960 approving and declaring the reorganization petition filed in good faith makes moot the request that further action of the District Court be stayed pending disposition of that appeal. As to the relief sought with respect to the injunctive order of February 10, 1959 and the motion to vacate said injunction we are of the opinion that petitioner may not so use the writ of mandamus as a substitute for the relief he failed to seek by a timely appeal. Nor does his petition set forth any change in circumstances in fact or law since entry of the order which establishes a clear legal right to vacation of such order. Consequently, we are of the opinion that petitioner has failed to demonstrate a right to compel the District Court to take the action he requests. The application for a writ of mandamus and prohibition is denied.
 
 
 37
 Judgment order approving reorganization petition affirmed; appeal from imjunctive order dismissed; petition for writ of mandamus and prohibition denied.
 
 
 
 [1]
 By their respective Notices of Appeal appellants included certain additional orers from which appeals were sought to be prosecuted. On motions of appellees the appeals from such orders were dismissed by this Court as untimely
 
 
 [2]
 The Schepps had received an aggregate of $150,000.00 of stocks for services and expenses. References to 'Schepps,' 'Schepp interests,' 'Schepp stock' include Benjamin F. Shepp and his holdings,
 
 
 [3]
 Aside from the affidavit required by G.O. 5 and G.O. 52(2), 11 U.S.C.A. following section 53, supporting the claim of Producers, Inc., to the effect that the notes were not purchased for the purpose of instituting the proceedings