449 A.2d 1366

**ROCHESTER MACHINE CORPORATION, Appellant,**

**v.**

**MULACH STEEL CORPORATION, Appellee.**

Supreme Court of Pennsylvania.

Argued March 2, 1982.

Decided May 28, 1982.

546

John J. Petrush, Petrush & Miller, Ltd., Beaver Falls, for appellant.

Fred C. Houston, Jr., John F. Meck, Houston, Houston & Donnelly, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

HUTCHINSON, Justice.

On January 24, 1978, Appellant Rochester Machine Corporation (Rochester) filed a complaint for confession of judgment against Appellee Mulach Steel Corporation (Mulach)

pursuant to a warrant of attorney contained in a real estate and equipment lease. The basis for the confession of judgment was Mulach's alleged failure to make repairs to the leased premises and equipment as required in the lease agreement. Judgment was subsequently entered in the amount of $41,738.94, however, that judgment was opened. On January 23, 1979 a jury returned a verdict in favor of Rochester in the amount of $47,300.00. The trial court denied Mulach's motion for a new trial. A panel of the Superior Court reversed and granted Mulach a new trial on the ground that the trial court erred in admitting certain correspondence between the parties' attorneys. 287 Pa.Super.Ct. 270, 430 A.2d 280 (1981) (Opinion by Brosky, J.; Montgomery, J. dissenting). We disagree and accordingly reverse the order of the Superior Court.

The background of the case is as follows: On November 14, 1975, Mulach leased certain premises from Rochester for a period of one year. The lease was subsequently extended to November 14, 1977. On August 31, 1977 Rochester, through its attorney, sent a letter to Mulach which presented an itemized list of damages said to be caused during Mulach's occupancy. The letter demanded immediate payment of the estimated cost of repairs. On October 31, 1977, Mulach replied by way of a letter from its attorney. The letter consisted of an item by item response to each claim for damages asserted in Rochester's letter of August 31. With respect to some of the items, Mulach stated "Mulach accepts responsibility." With respect to several others, Mulach declined to accept responsibility, generally offering instead a brief explanation as to why it was not liable for the claimed item.[1]

1. Rochester's letter to Mulach, dated August 31, 1977 states, *inter alia:*

> The extensive repairs made necessary by damage during your occupancy are as follows:
>
> . . . .
>
> In view of the nature and extent of the damage and the cost of the required repairs (over $30,000), we must insist upon a prompt and definite commitment from you respecting the restoration of the premises to their former good condition.

I

The general rule is that an offer to compromise is not admissible in evidence at trial as an admission that what is offered is rightfully due or that liability exists. *Woldow v. Dever*, 374 Pa. 370, 376, 97 A.2d 777, 781 (1953). Our threshold inquiry, then, is whether the correspondence between Mulach and Rochester can be fairly characterized as relating to an offer of compromise. Although this Court has not, heretofore, defined an offer to compromise, it is generally defined as the settlement of differences by mutual concessions; an adjustment of conflicting claims. *Kelly v. Steinberg*, 148 Cal.App.2d 211, 219, 306 P.2d 955, 960 (1957) (citing Webster's International Dictionary, (2d ed.). Under such a definition the demand by Rochester stating items of damages caused by Mulach and demanding the estimated amount for their repair cannot be construed as an offer to compromise a disputed claim. *See Gallagher v. Viking Supply Corp.*, 3 Ariz.App. 55, 411 P.2d 814 (1966). Likewise,

> In conclusion, we wish to inform you that under Pennsylvania law, in a situation of this kind the landlord is entitled not only to the cost of repairs, but also to the rental value of the premises lost during the period while repairs are being made. Thus, you will see that it is in your best interest as well as our client's to resolve this matter as soon as possible.
>
> Please let us have you reply by September 15. Unless we receive a constructive response from you by then, we must assume that you are rejecting our client's claim.

Mulach's reply of October 31 states that "Mulach accepts responsibility" for items 2, 3, 4, 5, 7, 10 & 12. With respect to the remaining items of damage listed by Rochester Mulach's reply states, *inter alia:*

> Client insists that the lay-in ceiling in the toilet room had fallen when they took possession, and they will not do anything about this.
>
> . . . .
>
> Mulach does not accept responsibility. Our employees tell us that Mr. Jeffry Bruce cut all the holes in that door, and we will do nothing about it. He denies this, but this is a factual issue.
>
> . . . .
>
> We question whether or not the owners' insurance would cover this item. It occurred when the building was broken into by third parties.
>
> . . . .
>
> Mulach will accept no responsibility for the cranes except to replace the pennants. The cranes are in better shape today than they were when Mulach began its Lease.

Mulach's response cannot be construed as a settlement offer or as a counter-settlement offer. Mulach's response, accepting "responsibility" for some items of damage while refusing "responsibility" for others, does not in any way suggest that it is an offer to compromise a disputed claim. Rather it is nothing more, or less, than what it purports to be, an admission of liability with respect to some items of damages and a disclaimer of liability with respect to others.[2] There is no suggestion in the letter of efforts to negotiate a compromise. In fact, Mulach's letter suggests an exactly opposite intent. That is to say, Mulach's letter suggests that it is unwilling to compromise or to negotiate the disputed items.

We believe that the trial court correctly relied on the opinion of the Montgomery County Court of Common Pleas in *Rockledge Municipal Authority v. E. Leva & Son's, Inc.,* 89 Montg.L.R. 342 (1968), *aff'd per curiam,* 434 Pa. 554, 252 A.2d 195 (1969) in determining the correspondence in the present case was not related to an offer to compromise. No. 108–78, Slip Op. at 5 (C.P. Beaver Co., July 16, 1979). In *Rockledge* parties to a construction contract met to discuss alleged defects in the work performed by the defendant contractor. Defendant contractor's representative acknowledged the defects and agreed to correct them. The *Rockledge* court stated:

> The fact that this meeting was held and Mr. Leva agreed to correct the listed defects is not contested by the defendants. It is the defendants' position, however, that this meeting and the subsequent letter was in the nature of compromise and therefore should not be admissible in the case.

**2.** Item 8 of Rochester's letter indicates a new roll-up steel door was required as a result of damage by Mulach. Mulach's reply to item 8 demonstrates its unequivocal intention *not* to settle the disputed questions of liability. Mulach's reply to item 8 states:
> 8. Mulach does not accept responsibility. Our employees tell us that Mr. Jeffrey Bruce cut all the holes in the door, and *we will do nothing about it. He denies this but this is a factual issue.* (emphasis added).

It is true that offers of compromise are not admissable evidence, yet this letter is an acknowledgment of defects, rather than an offer to compromise anything. We clearly believe that the letter is admissable and is some evidence that E. Leva & Sons, Inc., admitted that the defects were a result of work that was done by it under the contract.

. . . .

We hold that this meeting and the letter that followed it are proper matters to be inquired into, and are in the nature of an admission of responsibility rather than an offer to compromise.

*Rockledge,* 89 Montg.L.R. at 348.

## II

■ Even if the letter of October 31, 1977 is viewed as an offer of compromise, those portions of the letter constituting distinct admissions are, in fact, admissible. It is well settled that this Commonwealth adheres to the Common Law Rule that:

> While an offer to pay a sum of money to compromise a dispute is not admissable in evidence to prove that the sum offered was admitted to be due, the *distinct admission of a fact* is not be excluded because it was accompanied by an offer to compromise the suit.

*Mannella v. City of Pittsburgh,* 334 Pa. 396, 403, 6 A.2d 70, 73 (1939) (emphasis added) (citing *Rabinowitz v. Silverman,* 223 Pa. 139, 72 A. 378 (1909); *Bascom v. Danville Stove & Manufacturing Co.,* 182 Pa. 427, 38 A. 510 (1897); *Arthur v. James,* 28 Pa. 236 (1857); *Sailor v. Hertzogg,* 2 Pa. 182 (1845)).[3]

---

**3.** Henry, *Pennsylvania Evidence* § 80 (1953) states:
> Distinct admissions of fact, however, unless made expressly without prejudice, will not be excluded merely because made in connection with an offer to compromise, since if a party admits a fact to be true, the evidence is admissable regardless of the motives which may have prompted the statement.

See Also Brown, *Pennsylvania Evidence* p. 137 n. 11; (1949) Jenkins, *Pennsylvania Trial Evidence* § 4.16 (1974).

The specific acceptance of responsibility for specific items of damages is fairly construed as a distinct admission.[4]

Our rule permitting the introduction of distinct admissions made in the course of settlement negotiations has been subject to some criticism. Moreover, under the Federal Rules of Evidence such admissions, made in the course of settlement negotiations, are inadmissible.[5] Hence, we take this opportunity to reexamine the validity of our rule.

According to *Wigmore on Evidence* § 1061 (Chadbourn rev. ed. 1972), there are three alternative theories which account for the exclusion of evidence related to settlement negotiations. The theory which a particular court adopts will determine the scope of the exclusion. The first theory is grounded in a privilege protecting as confidential all overtures of settlement made to the opposing party. The privilege is based on the belief that expeditious and extrajudicial settlements are to be encouraged and that privacy of communication is necessary in order to encourage them. Under this view, all statements made in the course of settlement negotiations must be excluded. Indeed such a position is ratified by Rule 408 of the Federal Rules of Evidence. *See Weinstein's Evidence* ¶ 408(03).[6]

**4.** Black's Law Dictionary, p. 1476 (rev. 4th ed. 1968) defines the word responsibility as "the obligation to answer for an act done, and to repair any injury it may have caused." The term responsibility is synonymous with liability. *Bostick v. Usry,* 221 Ga. 647, 146 S.E.2d 882, 883 (1966) (citing Webster's 3rd Int. Dictionary, p. 1935). *The Mary F. Barrett,* 279 F. 329, 334 (3d Cir. 1922).

**5.** Fed.R.Evid. 408 provides, *inter alia:*
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissable to prove liability for or invalidity of the claim or its amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* (emphasis added).

**6.** The criticism of the common law rule made by adherents of the privilege view is that the common law rule discourages freedom of communication in settlement negotiations.
The practical value of the common law rule has been greatly diminished by its inapplicability to admissions of fact, even though

On the other hand, Professor Wigmore, the leading academic proponent of the relevancy theory states:

> The true reason for excluding an offer of compromise is that it *does not* ordinarily proceed from and *imply a specific belief that the adversary's claim is well founded,* but rather a belief that the further prosecution of that claim, whether well founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered. In short, the offer implies merely a desire for peace, not a concession of wrong done:
>
> . . . .
>
> By this theory, the offer is excluded because, as matter of interpretation or inference, it does not signify an admission at all. There is no concession of claim to be found in it, expressly or by implication. Conversely, if an express admission is in terms made, it is receivable, even though it forms part of an offer to compromise:

*Wigmore on Evidence, supra* at § 1061, pp. 36–37 (emphasis in original) (footnotes omitted).

The third view, adopted by the courts of England and almost universally rejected by scholars and by courts in the United States is described by Professor Wigmore as follows:

> Another theory, resting apparently on some notion of *contract,* is that an *express reservation* of secrecy (e.g., by the words "*without prejudice*") assimilates the offer to a contractual offer, so that if the terms are not accepted the offer is null and can have no evidential effect.

*Wigmore on Evidence, supra* at § 1061, p. 35 (emphasis in original).

made in the course of compromise negotiations, unless hypothetical, stated to be "without prejudice", or so connected with the offer as to be inseparable from it. McCormick § 251, pp. 540–54]. An inevitable effect is to inhibit freedom of communication with respect to compromise, even among lawyers. Another effect is the generation of controversy over whether a given statement falls within or without the protected area.

These considerations account for the expansion of the rule herewith to include evidence of conduct or statements made in compromise negotiations, as well as the offer or completed compromise itself.

Advisory Committee's Note, Fed.R.Evid. 408.

Our Court, while recognizing the public policy behind expeditious extrajudicial settlements, has adopted the relevancy view.

It is never the intendment of the law to shut out the truth, but to repel any *inference* which may arise from a proposition made, not with the design to admit the existence of a fact, but merely to buy one's peace. If, however, an admission is made *because* it is a fact, the evidence to prove it is competent, whatever motive may have prompted the declaration. If A. offers to B. ten pounds in satisfaction of his claim of a hundred pounds, merely to prevent a suit, or purchase tranquillity, this *implies* no admission that any sum is due and therefore the testimony to prove the fact must be rejected, because it evinces nothing concerning the merits of the controversy. But if A. admits a particular item in the account, or any other fact, meaning to make the admission as being true, this is good evidence, although the object of the conversation was to compromise an existing controversy.

*Sailor v. Hertzog,* 2 Pa. at 186 (quoting *Hartford B. Co. v. Granger,* 4 Conn. 142, 148) (emphasis in original). *See also Heyman v. Hanauer,* 302 Pa. 56, 152 A. 910 (1930); *Rabinowitz v. Silverman,* 223 Pa. 139, 72 A. 378 (1909); *Arthur v. James,* 28 Pa. 236 (1857).

It should be clear, however, that our refusal to exclude distinct admissions made in the course of settlement negotiations does not act as a significant deterrent to extra-judicial settlements. A party seeking to invoke our exclusionary rule in accordance with the common law needs only to characterize his admissions in hypothetical terms. *See* Weinstein's Evidence, *supra* at § 408(03) (citing *Factor v. Commissioner,* 281 F.2d 100, 125–127 (9th Cir. 1960); *cert denied,* 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 367 (1961) *Re Evansville Television, Inc.,* 286 F.2d 65, 70 (7th Cir. 1961)). *cert denied sub nom., Schepp v. Producers, Inc.,* 366 U.S. 903, 81 S.Ct. 1048, 6 L.Ed.2d 204 (1961).[7]

7. According to *McCormick on Evidence* § 274 (1972):

The generally accepted doctrine has been that an admission of fact in the course of negotiations is not privileged unless it is hypotheti-

A logical concomitant of the Federal Rule is the exclusion of almost all otherwise relevant and competent admissions made between parties to a contractual dispute on the ground that such evidence was made during the course of compromise negotiations.[8] In each instance, the court must first determine whether discussions regarding a dispute between parties constitute "compromise negotiations," an ethereal inquiry at best. In fact, broadly defined, virtually any communication between parties to a dispute involving some "give and take" may be characterized as "compromise negotiations." We, therefore, retain the common law rule permitting introduction into evidence of distinct admissions, even if made in connection with an offer to compromise or in the course of settlement negotiations.

■ We recognize the public interest is furthered by encouraging parties to settle disputes without invoking the judicial process. However, if in the course of such negotiations a party makes a clear, unequivocal admission, without qualifying it as a hypothetical admission for purposes of compromise, and, in the context and circumstances sur-

cal—"we admit for the sake of the discussion only"—or unless it is expressly stated to be "without prejudice" or unless it is separably connected with the offer, so that it cannot be correctly understood without reading the two together.

While Professor McCormick, a proponent of the privilege theory, is critical of such distinctions, we remain unpersuaded by his view. In the present case, Mulach made distinct admissions of fact, in clear and absolute terms, through its attorney. It cannot be said that Mulach was punished for failing to use highly technical terms of art beyond the comprehension of a layman or that the failure to condition the admissions as hypothetical for purposes of settlement negotiations resulted from counsel's inadvertence. Rather it is apparent that Mulach said exactly what it meant to say, to wit, that it was responsible for some items of damages but that it intended to contest liability with respect to those damages which it believed that it had not caused.

8. The Federal Rule does not merely exclude admissions contained in offers to compromise; the scope of its exclusion includes all "conduct or statements made in compromise negotiations".

rounding the offer it cannot be inferred that the admission is inextricably connected to an offer to compromise, it is admissible. Implicit in our rule is the conclusion that the public policy which protects litigants in the compromise of their disputes must bow before the stronger public policy which requires that issues of fact be determined on the basis of the greatest amount of relevant nonprejudicial testimony. *See* Annot., 15 A.L.R.3d 13, 30 (1967).

Accordingly, the order of the Superior Court is reversed and the judgment entered in the Court of Common Pleas of Beaver County is affirmed.

ROBERTS, J., files a concurring opinion in which FLAHERTY and McDERMOTT, JJ., join.

NIX, J., concurs in the result.

LARSEN, J., dissents.

ROBERTS, Justice, concurring.

I join in Part I of the Opinion of Mr. Justice Hutchinson but not in Part II, which discusses the continuing vitality of our common law rule relating to the admissibility of compromise evidence. Part I properly holds that Mulach's response to the letter of Rochester was an admission of liability, and not an offer to compromise. This holding makes it unnecessary to discuss whether the response would have been admissible had it been an offer to compromise.

FLAHERTY and McDERMOTT, JJ., join in this concurring opinion.